414 So.2d 858 (1982)
Salvatore J. PERAINO
v.
Emanuella Lentini PERAINO.
No. 12884.
Court of Appeal of Louisiana, Fourth Circuit.
May 11, 1982.
*859 Charles A. Kronlage, Jr., Kronlage, Dittman & Maselli, a Professional Law Corp., New Orleans, for defendant-appellant.
Peter J. Butler, Butler & Heebe, New Orleans, for plaintiff-appellee.
Salvatore J. Peraino, pro se.
Before BARRY, AUGUSTINE and WILLIAMS, JJ.
AUGUSTINE, Judge.
Salvatore J. Peraino and Emanuella Lentini Peraino were divorced by a judgment of June 30, 1980. Mrs. Peraino, being without fault and in necessitous circumstances, was awarded alimony in the amount of $2,500.00 per month. In addition, she was allowed the continued use of the family home on Bancroft Drive in New Orleans, the fair rental value of which was stipulated by the parties to be $1,500.00 per month. Mrs. Peraino was also allowed the use of the family car, a 1979 Mercedes-Benz 450 SEL, whose stipulated fair rental value is $800.00 per month.[1]
Following the judgment, Mrs. Peraino filed a motion for new trial, seeking to have the Court increase the amount of alimony. That motion was denied, and Mrs. Peraino now brings the present appeal, assigning as error the following:
1. The Lower Court erred in not holding the husband, Salvatore J. Peraino, responsible for the wife's income tax liability resulting from the support income to be received by her.
2. The Lower Court erred in not granting the wife an amount sufficient for her maintenance, including those expenses necessary to maintain her residence and automobile.

SPECIFICATION OF ERROR NO. 1
Appellant contends that Article 160 of the Louisiana Civil Code obligates the former husband, Mr. Peraino, to provide an amount of alimony sufficient for Mrs. Peraino's maintenance. She urges that within the term "maintenance" is included the income tax liability generated by alimony payments made to the former spouse. Ducote v. Ducote, 339 So.2d 835 (La.1976); Bernhardt v. Bernhardt, 283 So.2d 226 (La. 1973).
Appellant alleges that in fixing the alimony award, the trial court failed to take into consideration her tax liability, and therefore committed error under the rule of Ducote and Bernhardt, supra.
We find no error in the proceedings below regarding this issue. Appellant's motion for new trial and the memorandum in support thereof were explicit as to the theory of recovery, claiming that "The judgment does not declare whether or not Salvatore Peraino will be responsible for the tax liability resulting to Mrs. Peraino, under the judgment of the court, or whether it is the court's intention that the Two Thousand Five Hundred Dollars ($2,500.00) awarded to her is to include whatever that tax liability might be."
In the trial court's Reasons for Judgment, appellant's argument concerning tax liability was expressly acknowledged. The Court then stated its reasons for denying the Motion for New Trial:

*860 "Post divorce alimony under Louisiana Civil Code Article 160 is to be an amount sufficient to provide for the recipient's maintenance. Maintenance includes food, clothing, shelter, and other basic necessities."

"The Court feels that its award in these proceedings is in an amount sufficient to provide for those needs. See Boisfontaine v. Boisfontaine, 357 So.2d 90 [(La. App.)]."
It should be clear from the above that the court's denial of the motion for new trial and for increase in alimony was based upon a full awareness of the law and the facts, and that the sum of $2,500.00 was intended by the trial court to include appellant's tax liability on the alimony award.
A trial court's award of alimony will not be disturbed unless there is an indication that the court did not consider the tax consequences attributable to alimony in fixing the award. Meyer v. Meyer, 371 So.2d 1304 (La.App. 4th Cir. 1979). Finding ample evidence that the trial court did in fact consider the tax consequences arising in this case, we find no merit to appellant's first assignment of error.

ASSIGNMENT OF ERROR NO. 2
During the Perainos' ten-year marriage, their community garnered its considerable wealth from the ownership of Dixie Tomato and Packaging, Inc., (DIXIE), a closed, family corporation. Dixie's average taxable income for the fiscal years 1977-1979 was in the neighborhood of $200,000.00, after sizeable deductions for promotion and entertainment as well as for automobile and travel expenses. These deductions were over and above payments made to pension and profit sharing plans, which in the year 1979 alone, totalled $189,322.00. Salvatore J. Peraino, as the highest paid employee of Dixie, was the largest beneficiary of these pension and profit sharing plans.
As Dixie prospered, so did the community. Average gross taxable income to the Peraino family for each of the three years from 1977-1979 was approximately a quarter of a million dollars, reflecting, for the most part, Mr. Peraino's salary as an employee of Dixie.
With these incomes, the Peraino family enjoyed virtually unlimited material freedom. Their opulent home on Bancroft in New Orleans was appraised at $450,000, not including the many expensive movables which enhanced the aesthetics of the Peraino's environment by approximately $40,000, according to the appraisal. The community also owned a condominium and an unimproved lot at Diamonhead in Mississippi. Other properties (including common capital stock in Dixie valued at $761,346.00) brought the value of the Peraino community to $1,910,625.44.
Mrs. Peraino stated in her testimony that she was a member of the Metairie, Timberlane, and Chateau Estates Country Clubs, as well as the Yacht Club at Diamonhead; that she and Mr. Peraino were frequent travelers to Las Vegas, the Caribbean, Aspen, New York and Europe, averaging about three trips a year.
Suffice to say that the Perainos had been accustomed to a life style which, in appellant's own words, involved unlimited travel, vacations, expense accounts, credit cards, country club memberships and the like.
Appellant, Mrs. Peraino asks us to revise the award of $2,500.00 per month in alimony because it is insufficient for her needs. The thrust of her argument is that "necessity" is a relative term which must be defined, for the purpose of alimony, in relation to the living habits of the awarded spouse, considering the type of home in which she resides, the type of food which she is accustomed to eating, the type of car driven by her and its attendant expenses, the type of clothing which she is used to wearing, etc.
Appellant acknowledges, first, that the legal premise for the award of post-divorce alimony is different from that of alimony pendente lite, and therefore that following divorce, the husband need not support his former spouse in the manner to which she had been accustomed. But the release of this obligation, she says, applies only to those expenses which are outside the sphere *861 of "maintenance", so that although the husband may no longer be obligated to support his wife's travels, country club memberships, entertainment, etc., he is nevertheless bound to support her in the manner to which she is accustomed where it concerns food, clothing, shelter, etc.
Appellant contends that this conclusion is compelled by the fact that our jurisprudence reveals considerable variance from case to case in the amounts of alimony found to be sufficient to satisfy the wife's needs: Bernhardt v. Bernhardt, 283 So.2d 226 (La.1973) awarded $650.00 per month; Ward v. Ward, 339 So.2d 839 (La.) allowed $400.00 per month; Ducote v. Ducote, 339 So.2d 835 (La.1976), $500.00 per month; Boisfontaine v. Boisfontaine, 357 So.2d 90 (La.App. 4th Cir. 1978), $1,500 per month. This variance, according to appellant, must be explainable by the peculiar living habits of each recipient; otherwise, all alimony awards would be the same.
At oral argument on the motion for new trial, appellant stated that:
"I'm not about to deny that this is an extremely high alimony award. In an ordinary situation, in an ordinary family, I wouldn't be standing here arguing my client's point, but this is a half-million dollar a year incomeproducing family, and the result is this family has cultivated an extremely high style of living."[2]
The proposition for which appellant argues so strenuously has been already considered and rejected by this court, most notably in Boisfontaine v. Boisfontaine, 357 So.2d 90 (La.App. 4th Cir. 1978). There, an alimony award of $2,222.22 per month was found to be excessive and was reduced to $1,500.00 per month. The reason for the reduction was that, in fixing the sum, the trial court failed to consider the wife's needs, but focused instead on the husband's ability to pay. And while a husband's income, when substantial, may be considered in relation to the wife's needs in setting alimony, the amount of the award is primarily based on needs and must have some basis in fact. Boisfontaine, supra, at 92.
In reducing the award in that case, we stated that the husband is not obligated to continue his former spouse in her former standard of living. We cited Ward v. Ward, 339 So.2d 839 (La.1976), which held that alimony after divorce is essentially different from alimony pendente lite in that the former is in the nature of a pension and is limited to basic necessities. This follows from the principle that after divorce, the husband's obligation to support the wife no longer exists. Frederic v. Frederic, 302 So.2d 903 (La.1974).
The very purpose of alimony pendente lite, on the other hand, is to maintain the wife at a standard of living comparable to that which she enjoyed prior to her separation from her husband. Hall v. Hall, 348 So.2d 707 (La.App. 1st Cir. 1977); Langham v. Langham, 381 So.2d 1284 (La.App. 2nd Cir. 1980).
It is clear that in Boisfontaine, we intended the announced rule to apply to those expenses which fall within the ambit of "maintenance"there were no other kinds of expenses at issue in that case. We reiterate, therefore, that as to those items of necessity which our jurisprudence has subsumed under the term "maintenance", there is no obligation to support the former wife in the manner to which she was accustomed during her marriage.
The variance in alimony awards to which appellant refers is explained by Art. 160:
"... In determining the entitlement and amount of alimony after divorce, the court shall consider the income, means, and assets of the spouses; the liquidity of such assets; the financial obligations of the spouses, including their earning capacity;... (and) any other circumstances that the court deemed relevant."
In the present case, although the trial court indicated its belief that the appellant owned in excess of $40,000.00 in jewelry and questioned the wife's veracity when she testified that $42,000 kept in the wife's separate bank account was actually held *862 there for her twenty-eight year old son (but that he did not yet know of its existence), the court nevertheless allowed the appellant the benefit of the doubt and awarded her $2,500.00 per month, plus the use of the family home on Bancroft Drive and the family car, a Mercedes-Benz 450 SEL. Appellant's jewelry and the $42,000.00 held for the son were not regarded by trial court in setting that figure.
We see no reason to disturb that award. The trial court properly assessed all the relevant factors in setting the award, including, to some degree (although it was by no means bound to do so) the wife's life-style during her former marriage. Transcript of argument for new trial, p. 5. The trial court also considered Mr. Peraino's considerable wealth and future earning capacity, as it was bound to do. But most significantly, the court considered the wife's basic needs, and awarded a sum which, in the trial court's view, was "generous".
We agree with that determination. Absent a clear abuse of the trial court's great discretionand we find none herewe will not revise an award of permanent alimony. Douglas v. Douglas, 385 So.2d 402 (La.App. 1st Cir. 1980), writ refused, 386 So.2d 358 (La.1980); Meyer v. Meyer, 371 So.2d 1304 (La.App. 4th Cir. 1979), writ refused, 373 So.2d 546 (La.1979).
For the reasons stated, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] In June of 1980 when this case came to trial, the automobile was still relatively new, having been purchased on August 28, 1979. Mileage was 1,093, as of October of 1979.
[2] P. 4 of transcript of oral argument, September 30, 1980.