591 So.2d 1293 (1991)
Linda VERNOTZY, Plaintiff-Appellee,
v.
Richard VERNOTZY, Defendant-Appellant.
No. 90-726.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1991.
*1294 Preis, Kraft & Daigle, Christopher Philipp, Lafayette, for plaintiff-appellee.
Strainn, Dennis, Ellis, Mayhall & Bates, David S. Fitzgerald, Jr., Lafayette, for defendant-appellant.
Before LABORDE, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
The issues in this divorce litigation are whether the trial court awarded an excessive amount of permanent alimony and whether it properly assessed the expert witness' fee.
Richard Vernotzy and Linda D. Vernotzy were married in Montgomery, Texas on June 17, 1984. The Vernotzies established their matrimonial domicile in Lafayette, Louisiana on January 3, 1988, and on November 9, 1988, Richard permanently left the matrimonial domicile. On October 23, 1989, the trial court found Linda free from fault and granted her a judgment of divorce on the ground that Richard committed adultery on November 11, 1988. Richard does not contest the trial court's resolution of the fault issues.
Richard contends that the trial court's permanent alimony award of $1,100 per month exceeds what is considered necessary for Linda's maintenance.
LSA-C.C. Art. 112 (formerly Art. 160) provides, in pertinent part:
"A. (1) When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic alimony which shall not exceed one-third of his or her income ...
(2) In determining the entitlement and amount of alimony after divorce, the court shall consider:
(a) The income, means, and assets of the spouses;
(b) The liquidity of such assets;
(c) The financial obligations of the spouses, including their earning capacity;
(d) The effect of custody of children of the marriage upon the spouse's earning capacity;
(e) The time necessary for the recipient to acquire appropriate education, training, or employment;
(f) The health and age of the parties and their obligations to support or care for dependent children; and
(g) Any other circumstances that the court deems relevant.
(3) In determining whether the claimant spouse is entitled to alimony, the court shall consider his or her earning capability, in light of all other circumstances."
In awarding permanent alimony, it is necessary for the trial court to examine the totality of the circumstances in light of the factors enunciated in the Civil Code. Slayter v. Slayter, 576 So.2d 1121 (La.App. 3rd Cir.1991). The principal factor to be considered is the relative financial positions of the parties. Lopez v. Breaux, 462 So.2d 1333 (La.App. 3rd Cir.1985).
Maintenance includes food, clothing, shelter, reasonable and necessary transportation expenses, utility expenses, medical and drug expenses, household expenses, professional dues, home and health insurance policies, telephone expenses, personal *1295 items, and income tax liability generated by the alimony payments. A trial court's determination of permanent alimony will not be disturbed on appeal unless its ruling is manifestly erroneous. Slayter, supra.
In the case sub judice, the evidence establishes that Linda was thirty-nine years of age at the time of trial. It also shows that on June 4, 1982, Linda had a stroke which left her legally blind. On appeal Richard does not contest that Linda was unemployable at the time of trial and that she would not be employable in the future because of her blindness. At the time of trial, Linda's income, excluding alimony pendente lite, was $724 per month.
Richard was fifty-two years of age at the time of trial and was employed as a petroleum engineer consultant for Titan Technologies. He has a monthly income of $5,000 and receives reimbursement of approximately $600 per month for business expenses.
The evidence bears out that Linda was dependent upon Richard during their marriage for earning a living, taking care of the house, driving her around, buying groceries, and going shopping. After obtaining a judgment awarding her alimony pendente lite of $1,425 per month, Linda moved to St. Paul, Minnesota where she rented a downtown apartment for $750 per month; although the rental was more expensive downtown, the location provided her with the ability to get around without an automobile since much of downtown St. Paul is connected by enclosed walkways between buildings. The record further shows that Linda requires monthly medical attention and prescriptive medication on a regular basis.
The record fully develops the line items contained in Linda's affidavit of income and expenses, and Richard fully explored those items under cross-examination in an attempt to clarify for the trial court whether they fit under the jurisprudential definition of maintenance. As pointed out hereinabove, we do not focus on any one factor, but rather look at the totality of the circumstances.
In the case sub judice, we agree that Linda's expenses for piano lessons and her veterinarian bills do not constitute items of maintenance. We have likewise closely scrutinized Richard's objections that Linda's rent was too high, that her medical expenses were overstated, and that her credit card expenses were not awardable. However, after carefully examining Richard's contentions in light of the totality of the circumstances presented, we can discern no clear error or abuse of discretion in the trial court's award of permanent alimony.
Lastly, Richard contends that the trial court erred in assessing him with a $500 fee for the expert testimony of Dr. Phillip B. Haber, a licensed Minnesota psychologist who testified upon Linda's behalf that she was unemployable. Richard argues that travel expenses for an expert witness from out-of-state are not compensable when local experts could have testified without the necessity of the travel expenses.
Assuming arguendo that there is merit to Richard's contention, we find that it nonetheless fails since the premise of his argument, i.e., that local experts could have testified, is not supported by the record. There is no testimony in the record that the Lafayette medical community conducted testing on Linda to the extent of Dr. Haber's which would have been determinative of the question of her employability.
Dr. Haber testified that he examined Linda in Minnesota, and did not charge for her three-day examination. Linda paid $585 for Dr. Haber's transportation to Lafayette and was responsible for his motel accommodations in the city; the cost of the motel is not included in the trial record. In light of this testimony, the trial court assessed Richard with a $500 expert witness fee.
Based on the record before us, we cannot say that the trial court's assessment of the *1296 expert witness fee was manifestly erroneous.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Richard Vernotzy.
AFFIRMED.