634 So.2d 1302 (1994)
Janice Faye HARRINGTON, Plaintiff-Appellant,
v.
Donald Ray MONTET, Defendant-Appellee.
No. 93-984.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1994.
*1303 Gordie Ray White, New Iberia, for Janice Faye Harrington.
Joseph L. Ferguson, New Iberia, for Donald Ray Montet.
Before WOODARD and DECUIR, JJ., and BERTRAND[*], J. Pro. Tem.
WOODARD, Judge.
This is an appeal from a judgment dismissing plaintiff's claim for permanent periodic alimony.

FACTS
Plaintiff, Janice Faye Harrington, and defendant, Donald Ray Montet, were married November 8, 1970. Of the five children born of the marriage, four were minors at the time these proceedings were filed. The parties physically separated on July 14, 1992, and plaintiff filed a petition for a divorce based on La.Civ.Code art. 102 on July 15, 1992. On January 20, 1993, defendant filed a motion for judgment of divorce. On February 11, 1993, plaintiff filed a motion to fix all issues, including a determination of her entitlement to permanent alimony. All issues were heard March 15, 1993.
The trial court found plaintiff was not free from fault and denied her claim for permanent periodic alimony. A judgment granting the divorce and dismissing plaintiff's claim for permanent alimony was signed April 2, 1993. Plaintiff appeals the dismissal of her claim for permanent alimony and asserts the following assignments of error: (1) the trial court erred in overlooking the testimony of every witness called that plaintiff was free from fault; (2) the trial court erred in finding defendant free from fault which would have been a separate cause for divorce; and (3) the trial court erred in finding plaintiff guilty of abandonment. We reverse.

LAW
A spouse is entitled to permanent alimony when he or she has not been at fault and does not have sufficient means for support. La.Civ.Code art. 112. The burden of proving freedom from fault is on the spouse seeking alimony. Gibson v. Gibson, 592 So.2d 855 (La.App. 3 Cir.1991). Although *1304 former Civil Code articles 138 and 139 have been repealed, fault for purposes of permanent alimony is synonymous with conduct which would entitle the other spouse to a separation or divorce under these articles. Wicker v. Wicker, 597 So.2d 1273 (La.App. 3 Cir.1992). The trial judge found plaintiff was not free from fault because she abandoned the matrimonial domicile without legal cause.
Abandonment by a spouse occurs when that spouse withdraws from the common dwelling, without lawful cause, and constantly refuses to return. Gitschlag v. Gitschlag, 593 So.2d 1331 (La.App. 1 Cir. 1991). In the case sub judice, plaintiff left the common dwelling on July 14, 1992. She filed her petition for divorce the next day, thus, it is evident she did not intend to return. The issue for our review is whether plaintiff left without lawful cause.
This Circuit has held that lawful cause for leaving the common dwelling exists when the other spouse has acted in a manner which amounts to fault under former Civil Code article 138. Durand v. Willis, 470 So.2d 947 (La.App. 3 Cir.), writ denied, 477 So.2d 98 (La.1985). The trial court found that defendant's actions "did not reach a point which would have been separate cause for divorce." A trial court's determination of fault will not be disturbed on appeal in the absence of clear error. Taylor v. Taylor, 579 So.2d 1142 (La.App. 2 Cir.1993).
After a thorough review of the record, we find the trial court clearly erred in concluding defendant was free from fault which would have been a separate cause for divorce.
Plaintiff testified that she left defendant because she could not live with him anymore. Plaintiff stated that defendant has not talked to her during the past few years except to yell at her and nag her about spending money. Defendant got angry with plaintiff whenever she spent money on the children or on herself. This became such a problem that plaintiff rarely bought new clothes for herself; she wore clothes that were given to her by her parents or that belonged to her children. She even had the bills for one credit card mailed to her parents' house so she could buy clothes for the children without defendant's knowledge.
The record also reveals that defendant was an excessively jealous husband. He confronted plaintiff on a regular basis, accusing her of having an affair. Although there is absolutely no evidence that defendant had any basis for his suspicions, defendant often questioned friends and relatives, sometimes in the presence of the children, about plaintiff's fidelity. One daughter testified that her father was suspicious of her mother and was jealous of a sixteen year old bag boy to whom his wife was speaking. She also testified that her father "hollered a lot" and that he did not want plaintiff talking on the phone to anyone.
Another daughter testified that she was present when her father asked other people whether plaintiff was "running around" and whether anyone came to the house while he was gone. Plaintiff's mother testified that defendant accused plaintiff of running around. Defendant even called her house once to see if plaintiff was with someone. A family friend testified he often had conversations with defendant where defendant asked if plaintiff was having an affair and whether there had been any strange men around the house. Defendant admitted at the hearing that he asked questions about his wife's fidelity and that he was jealous of her boss.
From our review of the record, it appears that plaintiff was a model wife. Every witness testified that she did everything defendant wanted; she worked, cooked, cleaned, took care of the kids, and handled the family's finances. None of the witnesses ever saw plaintiff do anything negative toward defendant. In contrast, defendant was excessively jealous; he got angry with plaintiff for spending money; he yelled at plaintiff; he made plaintiff work while he slept on the couch; he treated plaintiff rudely; and he made plaintiff's family members feel unwelcome in the house, to the extent that they almost completely stopped visiting.
"Legal fault occurs when a spouse commits cruel treatment or excesses which compel a separation because the marriage is insupportable." Dean v. Dean, 579 So.2d 1124 (La.App. 2 Cir.), writ denied, 584 So.2d *1305 683 (La.1991). Acts of jealousy and accusations alone will not constitute cruel treatment, nor does mutual incompatibility, fussing and bickering. Wester v. Wester, 564 So.2d 799 (La.App. 3 Cir.), writ denied, 568 So.2d 1066 (La.1990). However, a continuous pattern of mental harassment, nagging and griping by one spouse directed at the other can constitute cruel treatment. Dean, supra.
This is not a case of petty jealousy or mutual incompatibility. Defendant has been suspicious and accusatory of plaintiff for a period exceeding five years. His suspicions were communicated to and in the presence of the children, as well as to family friends and relatives. His nagging and griping about money spent on clothes for plaintiff or the children were excessive and unreasonable, forcing plaintiff to conceal clothing purchases for the children. We find as a fact that defendant's conduct rendered this marriage insupportable. Therefore, plaintiff had lawful cause for leaving the matrimonial domicile. The trial court erred in concluding otherwise and dismissing plaintiff's claim for permanent alimony.
We must now determine the entitlement to and amount of permanent alimony. A spouse who is free from fault is entitled to permanent alimony if he or she does not have sufficient means for support. La.Civ.Code art. 112. In determining the entitlement to and amount of alimony, the court shall examine the totality of the circumstances in light of the factors listed for consideration in La.Civ.Code art. 112 A(2). Vernotzy v. Vernotzy, 591 So.2d 1293 (La. App. 3 Cir.1991). "Support" includes food, shelter, clothing, reasonable and necessary transportation and automobile expenses, utility expenses, medical and drug expenses, household expenses, and the income tax liability generated by alimony. Vernotzy, supra; Lindsey v. Lindsey, 546 So.2d 1332 (La.App. 3 Cir.1989). The amount of alimony is based primarily on the needs of the spouse claiming support, and the principal factor to be considered is the relative financial positions of the parties. Vernotzy, 591 So.2d at 1294; Spence v. Spence, 465 So.2d 155 (La.App. 3 Cir.1985); Peraino v. Peraino, 414 So.2d 858 (La.App. 4 Cir.1982).
Plaintiff has a gross monthly income of $623.00. Defendant's gross monthly income is approximately $4000.00. Plaintiff is the domiciliary parent of the minor children and defendant owes plaintiff monthly child support of $1,104.53. The parties have no outstanding community debts and the majority of the assets are non-liquid. Plaintiff's expenses are estimated to be $1,845.00 per month. Defendant's expenses are estimated to be $1,420.00 per month. In light of these considerations, we find plaintiff is entitled to permanent periodic alimony of $120.00 per month.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed. Defendant, Donald Ray Montet, is hereby ordered to pay plaintiff, Janice Faye Harrington, permanent periodic alimony in the sum of $120.00 per month. Costs of this appeal are assessed to defendant.
REVERSED AND RENDERED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.