STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 03-1126


TIMOTHY METHIAS FLOYD

VERSUS

MARY ANN SCHLOTTERBECK FLOYD


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 197,532
HONORABLE B. DEXTER RYLAND, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**


**Thomas Overton Wells**
**1254 Dorchester Drive**
**Post Office Box 13438**
**Alexandria, LA 71315**
**(318) 445-4500**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Mary Ann Schlotterbeck Floyd**

**Steven Patrick Mansour**
**2230 South MacArthur Drive**
**Post Office Box 13557**
**Alexandria, LA 71315**
**(318) 442-4855**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Timothy Methias Floyd**

AMY, Judge.

Plaintiff husband filed for divorce against defendant wife. In disposing of matters ancillary to the divorce, the trial judge denied the defendant's request for final spousal support and granted custody of the couple's minor child to the plaintiff. Defendant appeals that portion of the judgment denying final support. For the following reasons, we affirm.

### Factual and Procedural Background

Timothy Floyd and Mary Ann Schlotterbeck were married on August 12, 1973. Three children were born of the marriage; as of the date of trial, two had reached the age of majority, and the youngest child was fourteen years old. According to the record, Mr. Floyd moved out of the family residence on August 1, 1998, and on September 29, 1999, he filed a petition for divorce under La.Civ.Code art. 103(2). The minute entries for May 21, 2002, in the record reflect that the petition was uncontested, that testimony was heard, and that a judgment of divorce was rendered that same day. On July 15, 2002, a hearing was held on the issues of child custody, visitation, child support, final spousal support, and use of the family home. At this hearing, Ms. Floyd's claim for final support was dismissed on Mr. Floyd's motion. Judgment was rendered on September 17, 2002, granting custody of the couple's minor child to Mr. Floyd. Ms. Floyd was granted reasonable visitation and use of the family home. Her request for child support was denied as moot.

The record reflects that this judgment was signed on September 17, 2002, and notice of judgment was mailed to counsel for both parties on September 30, 2002. However, in the interim, while under the impression that her business in court had concluded, Ms. Floyd filed a joint motion with her attorney requesting his withdrawal from representation. The court granted the joint motion on September 27.

Nonetheless, when the notice of judgment was mailed on September 30, it was sent to Ms. Floyd's former attorney and not to Ms. Floyd herself. Similarly, the draft judgment prepared by Mr. Floyd's attorney was not submitted to Ms. Floyd for her approval before it was sent to the trial judge to be signed.

On November 6, 2002, Ms. Floyd, who had hired another attorney, filed a motion for new trial. In this motion, Ms. Floyd argued that because Mr. Floyd's attorney had not forwarded her the proposed judgment for her approval and because she was not represented by counsel at that time, the topics of final spousal support and child custody should be re-litigated. The record reflects that Ms. Floyd was granted a new trial as to the custody issue, and, with respect to final support, the trial court granted arguments only. At the conclusion of the proceedings, the trial judge upheld the court's prior custody determination and its decision that Ms. Floyd was not entitled to final support. From this judgment, Ms. Floyd appeals.

**Discussion**

In her sole assignment of error on appeal, Ms. Floyd argues that the trial court incorrectly denied her request for final support. She contends that no testimony given at trial indicated that she was a bad wife or that she had caused the break-up of her marriage. In fact, Ms. Floyd argues, the lack of testimony to this effect proves her freedom from fault. Ms. Floyd insists that she carried the burden of proof, and, consequently, she maintains that she is entitled to a new trial on the issue of spousal support.

The provisions of law applicable to the instant matter on appeal are La.Civ.Code arts. 111 and 112. Louisiana Civil Code Article 111 provides that

> In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party free from fault prior to the filing of a proceeding to terminate

2

the marriage, based on the needs of that party and the ability of the other party to pay, in accordance with the following Articles.

Louisiana Civil Code Article 112 lists various factors for the trial judge's consideration in determining whether an award of final support is merited. This article provides as follows:

> A. The court must consider all relevant factors in determining the entitlement, amount, and duration of final support. Those factors may include:
> (1) The needs of the parties.
> (2) The income and means of the parties, including the liquidity of such means.
> (3) The financial obligations of the parties.
> (4) The earning capacity of the parties.
> (5) The effect of custody of children upon a party's earning capacity.
> (6) The time necessary for the claimant to acquire appropriate education, training, or employment.
> (7) The health and age of the parties.
> (8) The duration of the marriage.
> (9) The tax consequences to either or both parties.
> B. The sum awarded under this Article shall not exceed one-third of the obligor's net income.

The concept that the burden of proof is upon the claimant spouse in an action for final support has been developed through the jurisprudence interpreting La.Civ.Code art. 112. In the context of final support actions, "fault" encompasses the grounds for divorce or separation listed in former La.Civ.Code arts. 138 and 139, now repealed. *Harrington v. Montet*, 93-984 (La.App. 3 Cir. 3/2/94), 634 So.2d 1302. The following sampling of behavior, classified as "fault," would prevent a claimant spouse from receiving final support: "adultery; conviction of a felony; habitual intemperance or excesses, cruel treatment, or outrages; public defamation; abandonment; an attempt on the other's life; status as a fugitive; and intentional non-support . . . ." *Goodnight v. Goodnight*, 98-1892, p. 3 (La.App. 3 Cir. 5/5/99), 735 So.2d 809, 812, (*quoting Guillory v. Guillory*, 626 So.2d 826, 829 (La.App. 2 Cir.1993)). Moreover, in

3

*Harrington*, 634 So.2d 1302, a panel of this court stated that a claimant spouse does not establish his or her entitlement to final support merely by proving that the other spouse was at fault—instead, the claimant spouse must *affirmatively prove* his or her own freedom from fault that caused the break-up of the marriage. We review, pursuant to the manifest-error standard, the trial court's determination that Ms. Floyd had not met this burden of proof. *Mayes v. Mayes*, 98-2228 (La.App. 1 Cir. 11/5/99), 743 So.2d 1257.

Ms. Floyd acknowledges that under La.Civ.Code arts. 111 and 112, she had the burden of proving her freedom from fault. She maintains that the lack of any testimony to the effect that she was a bad wife was sufficient to meet her burden of proof and that the burden then shifted to Mr. Floyd to prove that he had not abandoned the family home. Ms. Floyd hypothesizes that the trial court might have misinterpreted the burden of proof applicable to final-support claims as requiring her to show that her husband had been at fault or to pinpoint the cause of the break-up. Ms. Floyd points out that La.Civ.Code art. 111 does not impose such a burden. Instead, she contends, Mr. Floyd abandoned the family home when he moved out on August 1, 1998, and refused to return, despite her numerous entreaties for reconciliation.

After Ms. Floyd rested at the hearing in the instant matter, Mr. Floyd moved to dismiss her claim for final support, asserting that she had not proven freedom from fault so as to establish her qualifications for such an award. Before issuing a ruling, the trial judge expressed concern regarding the issue of fault, stating,

> I'm not we really [sic] understand of [sic] the evidence really before this court about the break up. I mean, what caused the break up? I don't know. I don't know whose fault the break up was on the basis of the evidence before the court at the present time. And I don't know how we

4

can determine that she's free from fault on the basis of the evidence in the– in the record. . . .

The record reflects that Ms. Floyd's attorney then recalled Ms. Floyd's testimony to the effect that she desired a reconciliation. Again, the judge expressed concern as to the burden of proof: "Now, does that prove she is free from fault? Free from fault in the break up?" According to the record, Ms. Floyd's attorney stated that he was of the opinion that nothing showed fault on her behalf, to which the trial judge responded, "Well, the burden, as I understand it, and I'll be glad to have you argue it, is that she's got to prove her freedom from fault. The totality of the circumstance." The record indicates that the following colloquy then occurred:

> THE COURT:
>> And I don't think they've [Mr. Floyd's counsel] got to prove she was at fault. I think the burden rests on you [Ms. Floyd's counsel] to prove her freedom from fault.
>
> MR. MOSLEY:
>> That's correct, Your Honor.
>
> THE COURT:
>> Go ahead and argue.
>
> MR. MOSLEY:
>> Well-uh-Judge, I– and I– I'm trying to go back in my mind to the testimony from this morning of the– some of the incidents from the marriage. Uh. I can't think of anything specifically addressed in the fault issue, Your Honor.

The trial judge then granted Mr. Floyd's motion to dismiss Ms. Floyd's claim for final support.

The jurisprudence attendant to Louisiana Civil Code Articles 111 and 112 emphasizes that for a claimant spouse to prove entitlement to final support, that spouse must *affirmatively prove* freedom from fault. *See, e.g., Harrington*, 634 So.2d 1302; *Gibson v. Gibson*, 592 So.2d 855 (La.App. 3 Cir. 1991). In light of this jurisprudential principle, we find no error in the imposition of this burden of proof upon Ms. Floyd, the claimant herein. Furthermore, considering that Ms. Floyd had

the burden of proving her freedom from fault leading to the break-up of the marriage, we find no manifest error in the trial judge's determination that she had not met this burden. The evidence presented at trial in the instant matter consisted of nothing more than general testimony as to the Floyds' marriage and divorce. No direct evidence was offered that positively established Ms. Floyd's freedom from fault as defined by the jurisprudence. Without such evidence directly addressing the issue of fault, the Floyds' general testimony does not meet the burden of proof required of a spouse in a final-support action.

## DECREE

For the foregoing reasons, the judgment denying final support is affirmed. All costs of this proceeding are assigned to the defendant-appellant, Mary Floyd.

**AFFIRMED.**