# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 06-1406


**EUGENE JOHN TERRY**

**VERSUS**

**WILMA JANE TERRY, BORN JONES**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-461-04
HONORABLE WENDELL R. MILLER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*


**JOHN D. SAUNDERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*


Court composed of John D. Saunders, Glenn B. Gremillion, and J. David Painter, Judges.


**REVERSED, AFFIRMED, AND REMANDED.**


**Kathleen Kay**
**Attorney at Law**
**P. O. Box 2042**
**Lake Charles, LA 70602-2042**
**(337) 439-7616**
**Counsel for Plaintiff/Appellee:**
**Eugene John Terry**

**Anne Elizabeth Watson**
**Dupre & Watson, L.L.C.**
**232 North Liberty Street**
**Opelousas, LA 70570**
**(337) 942-9790**
**Counsel for Defendant/Appellant:**
**Wilma Jane Terry, Born Jones**

**SAUNDERS, Judge.**

This is a domestic case where a wife brought an action for final periodic support against her husband. The trial court found that the wife failed to carry her burden of proof that she was free from fault and that the husband's fault is irrelevant in the proceedings.

The wife appealed these findings and we are requested to reverse the trial court's decision that she did not carry her burden of proof, reverse that her husband's fault is irrelevant to the proceedings, and render that she is entitled to final periodic support.

We reverse the trial court's finding that the wife did not carry her burden of proof that she was free from fault. We affirm the trial court's finding that the husband's fault is irrelevant in these proceedings. We remand this case for a determination by the trial court of the wife's need and the husband's ability to pay. Reversed, affirmed and remanded.

**FACTS AND PROCEDURAL HISTORY:**

Ms. Wilma Terry (hereinafter "Wilma") was married to Mr. Eugene Terry (hereinafter "Eugene") on April 2, 1987, in Jennings, Louisiana. Eugene worked as a serviceman for Entergy for the duration of the marriage. Just after the marriage began, Wilma was in an automobile accident after which she suffered migraine headaches of such a nature and degree that she could not work and relied on Eugene to care for her through administering shots and pain medication daily.

Wilma's medical condition remained the same until October 2000. At that time she went through a sinus surgery that cured her of her condition. Once she no longer suffered from the migraine headaches, Wilma began to work for Southside

Development Corporation (hereinafter "Southside"), a nonprofit company co-founded by Eugene.

The parties both testified that they had a wonderful marriage until around November of 2003. At that time, Eugene had begun to suspect that Wilma was having an affair with her coworker, Pastor Carl Fontenot (hereinafter "Pastor Fontenot"). Eugene's suspicions were based upon talk in the community, a lack of intimacy and communication between he and Wilma, and long working hours that Wilma and Pastor Fontenot spent together. These working hours included business trips they took together with other people that worked at Southside.

Eugene expressed his concerns to Wilma and confronted both she and Pastor Fontenot. At a meeting of the three, called by Eugene to discuss his concerns, both denied that any affair was taking place. Wilma offered Eugene the option to accompany her and Pastor Fontenot to any business trips they took, but on all but one occasion, Eugene declined.

Eugene continually claimed that Wilma was having an affair with Pastor Fontenot. On one business trip to New Orleans, where Wilma did not invite Eugene to attend, Wilma lied to Eugene about where she was staying. When testifying regarding this lie, Wilma stated that she had taken the trip alone to get away from Eugene's constant accusations that she was having an affair.

The parties physically separated on June 24, 2004, after Wilma left the family home. Wilma testified that Eugene had threatened to kill her if she did not leave the home. Wilma's testimony was corroborated by various witnesses' testimony that this event took place. Eugene filed a Petition for Divorce on July 24, 2004. A Judgment of Divorce was rendered on March 22, 2005.

2

On May 17, 2005, Wilma filed a rule for final periodic spousal support. Following trial held on three different days, a judgment denying final periodic spousal support was issued in the case. The trial court found that Wilma did not carry her burden of proof that she was free from fault in the destruction of the marriage. The trial court reached this decision based on a finding that Wilma did not do enough to alleviate Eugene's suspicions that she and Pastor Fontenot were having an affair. In its reasons for ruling, the trial court stated that Wilma could have rearranged her or Pastor Fontenot's work schedule or arranged for them to not travel on business trips together. The trial court also determined that Eugene's fault was irrelevant to the proceedings.

Wilma appealed this judgment alleging three assignment of errors. Wilma alleges that the trial court erred in finding that she did not carry her burden of proof that she was free from fault in the destruction of the marriage, that the trial court erred in failing to determine that Eugene's fault was the sole cause of the breakup of the marriage, and that the trial court should have awarded Wilma final periodic support of $2,500 per month.

We reverse the trial court's finding that Wilma did not carry her burden of proof that she was free from fault in the destruction of the marriage. We affirm the trial court's finding that Eugene's fault is irrelevant in the proceedings. We remand the case to the trial court to determine Wilma's need and Eugene's ability to pay so as to determine what final periodic support, if any, is warranted in this case.

Reversed, affirmed and remanded.

**ASSIGNMENTS OF ERROR:**

1.  Did the trial court err in finding that Wilma was at fault in the break up of the marriage by not taking steps to alleviate Eugene's suspicions that she was

having an adulterous affair and thereby denying her claim for final periodic spousal support?

2. Did the trial court err in failing to determine whether the break up of the marriage was due solely to Eugene's actions in accusing Wilma of adultery and threatening to kill her?

3. Did the trial court err in failing to award Wilma final periodic support in the amount of $2,500 per month, retroactive to May 17, 2005, when Wilma filed for final periodic spousal support?

**ASSIGNMENT OF ERROR #1:**

Wilma argues that the trial court erred in denying her claim for final periodic spousal support. Wilma contends that this denial was in error because it was based on an erroneous finding that she was at fault in the breakup of the marriage by not taking steps to alleviate Eugene's suspicions that she was having an adulterous affair. We agree.

It is well settled that a trial court's factual findings regarding fault in the area of domestic relations are given great deference on review. If the trial court's findings are reasonable, i.e. not manifestly erroneous or clearly wrong, then they will not be disturbed. *Coleman v. Coleman*, 541 So.2d 1003 (La.App. 3 Cir. 1989).

Louisiana Civil Code Article 111, in pertinent part, states, "[T]he court . . . may award final periodic support to a party *free from fault* prior to the filing of a proceeding to terminate the marriage.[...]"(emphasis added). The burden of proof regarding freedom from fault is on the party that is seeking support. Fault, in a permanent support context, is synonymous with conduct that would entitled a spouse to a separation of divorce under former La.Civ.Code arts. 138 and 139. *Harrington v. Monet*, 93-984 (La.App. 3 Cir. 3/2/94), 634 So.2d 1302.

Prior to its repeal, former Article 138 provided the grounds for separation of bed and board. Those grounds included the following: (1) adultery, (2) conviction

4

of a felony if sentenced to death or imprisonment at hard labor, (3) habitual intemperance, excesses, cruel treatment or outrages of one of the spouses toward the other, if these intemperances make living together unsupportable, (4) public defamation, (5) an attempt on the other spouse's life, (6) abandonment, (7) one spouse fleeing from justice when charged with a felony that one can prove the fleeing spouse was indeed guilty of committing, (8) intentional non-support of a spouse of the other spouse that is in destitute or necessitous circumstances, (9) when the spouses have lived separate and apart for six months with no reconciliation, and (10) when the spouses have lived separate and apart for six months and one spouse signs an affidavit indicating that the spouses have irreconcilable differences as to render their living together unsupportable and impossible.

Prior to repeal, former Article 139 provided grounds for immediate divorce. Those grounds included adultery and the other spouse's conviction of a felony for which sentence given was death or imprisonment at hard labor.

Jurisprudence has broadened fault to include other activity that can be construed as fault for the purpose of denying periodic spousal support. For a spouse to be free from fault, that spouse must not have had any misconduct of a serious nature that is an independent, contributory or proximate cause of the failure of the marriage. *Kendrick v. Kendrick*, 236 La. 34, 106 So.2d 707 (1958).

The trial court found that Wilma failed to carry her burden of proof that she was free from fault in the breakup of her marriage with Eugene. The trial court based this finding on its belief that Eugene had reasonable, growing suspicions regarding Wilma's relationship with Pastor Fontenot. These suspicions led to Eugene's lack of trust of Wilma and the eventual destruction of their marriage.

5

The trial court found that Wilma could have rearranged the work schedules of Pastor Fontenot and herself. Further, the trial court stated that Wilma could have made other arrangements regarding business trips that she, Pastor Fontenot, and others took. Because the trial court made these findings, it ruled that Wilma could have done more to alleviate Eugene's suspicions. Therefore, the trial court found that she had some fault in the eventual divorce and denied her request for final periodic spousal support. We disagree.

There is no evidence in the record that Wilma had the power to rearrange either her or Pastor Fontenot's work schedule. Further, there is no evidence that Wilma could decide who went on business trips for Southside. The only evidence in the record regarding business trips was testimony from both Wilma and Pastor Fontenot that their attendance on these business trips was mandatory as part of their employment.

There is, however, evidence in the record that Wilma took some steps to attempt to alleviate Eugene's suspicions. All testimony in the record indicates that Wilma vehemently denied ever having an affair with Pastor Fontenot. Also, at the request of Eugene, Pastor Fontenot met with Eugene and Wilma to discuss his suspicions. Both Wilma and Pastor Fontenot denied any affair had ever transpired between them. Further, the testimony of Wilma and Eugene indicated that Wilma had invited Eugene to attend the work related trips and there is at least one occasion where Eugene actually did attend a business trip with Wilma to Puerto Rico.

Moreover, there is no evidence that Eugene ever took steps to alleviate his concerns. If Eugene was concerned about any potential affair, he could have attended those trips that Wilma invited him to attend, but he choose not to do so. Further,

6

Eugene is a man with the financial means to hire a private investigator to ascertain if there was an affair between Pastor Fontenot and Wilma, but again, he chose not to do so.

Eugene argues that there is enough evidence in the record to indicate that Wilma did something to promote Eugene's suspicions and thereby preclude her from recovering final periodic spousal support. This evidence consists of a lie Wilma told Eugene about where she was staying when she took a trip to New Orleans. However, there is no evidence that Pastor Fontenot, nor anyone else, was on this trip with Wilma, nor is there any evidence that Wilma was not alone on this trip. In her testimony, Wilma stated that she lied to Eugene in order to relieve herself of his constant badgering regarding his suspicions.

The trial court did not comment on this situation in its reasons for ruling and focused more on Wilma's lack of rearrangement of schedules and business trips in finding that Wilma was not free from fault. We find that Eugene's argument that this isolated incident is enough to constitute fault is without merit. One lie told to a spouse that is not proven to lead to any faults listed in repealed Articles 138 and 139 and does not rise to a level of misconduct so serious in nature that it is an independent, contributory, or proximate cause of the failure of the marriage is not substantial enough evidence to find that Wilma is at fault in the case at bar.

Further, we find that the trial court's ruling that Wilma could have done more to alleviate Eugene's suspicions based on its findings is not supported by the record. Eugene has not argued, nor is there any evidence that Wilma committed any of the listed activities in repealed Articles 138 and 139. Moreover, there is also no indication that Wilma did any actions that would rise to a level of misconduct so

7

serious in nature that it is an independent, contributory or proximate cause of the failure of the marriage as stated in *Kendrick* .

Therefore, we reverse the trial court's judgment that Wilma failed to carry her burden of proof. We find that Wilma proved that she was free from fault and find that she is not precluded from receiving final periodic spousal support as a result of any misconduct presented in the record.

**ASSIGNMENT OF ERROR #2:**

Wilma contends that the trial court erred in failing to determine whether the break up of the marriage was due solely to Eugene's actions in accusing Wilma of adultery and threatening to kill her. We disagree.

For a spouse to be free from fault, *that spouse* must not have had any misconduct of a serious nature that is an independent, contributory or proximate cause of the failure of the marriage. *Kendrick*, 106 So.2d 707. (Emphasis added). When one spouse is seeking permanent periodic support, a determination of whether the other spouse's fault contributed to the destruction of the marriage is irrelevant. *Carr v. Carr*, 33,724 (La.App. 2 Cir. 4/5/00), 756 So.2d 639.[1]

In the case before us, Eugene has not alleged any fault by Wilma that makes Eugene's fault or lack thereof relevant. Any determination made by the trial court into whether Eugene was solely at fault, or at fault in any fashion would have been unnecessary and superfluous. As such, we find no merit in the assertion that the trial court should have determined whether Eugene was solely at fault for the breakup of the marriage. The trial court's finding that Eugene's fault is irrelevant is affirmed.

---

[1]There can be an exception to this general statement such as when one spouse is attempting to prove freedom from fault when that spouse is being accused of abandonment as noted in footnote 1 of *Gitschlag v. Gitschlag*, 593 So.2d 1331, 1335 (La.App. 1 Cir. 1991). Eugene has not argued that Wilma was at fault for abandonment.

**ASSIGNMENT OF ERROR #3:**

Wilma argues that the trial court erred in failing to award her final periodic support in the amount of $2,500 per month, retroactive to May 17, 2005, when Wilma filed for final periodic spousal support. We find that the trial court, with further proceedings on remand, would be better suited to make this determination.

Louisiana Civil Code Article 111, in pertinent part, states, "[T]he court . . . may award final periodic support to a party free from fault prior to the filing of a proceeding to terminate the marriage, *based on the needs of that party and the ability of the other party to pay*.[...]"(emphasis added).

Louisiana Code of Civil Procedure Article 2164 states in pertinent part, "[t]he appellate court shall render any judgment which is just, legal and proper upon the record on appeal." An appellate court will generally not adjudicate issues not ruled upon by the trial court, but when the appellate court has all of the facts and testimony and is able to pronounce with certainty on the case, that appellate court should render such judgment on appeal as the trial court should have rendered at trial. *Kilbourne v. Hosea*, 19 So.2d 279 (La.App. 1 Cir. 1944). However, when an appellate court finds that the interests of justice dictate that further evidence is required for the proper adjudication of the case, then the appellate court should remand the case to the trial court. *Polizzi v. Thibodeaux*, 35 So.2d 660 (La.App.Orleans 1948).

Because the trial court found that Wilma was not free from fault, it did not make any determination as to Wilma's need, or of Eugene's ability to pay support. Because there are no factual findings regarding these issues we either have to make a *de novo* review of the record or remand the case to the trial court for proceedings not inconsistent with this opinion. We find that there is not enough evidence in the

record for us to make an accurate determination of Wilma's need or Eugene's ability to pay.

There is evidence in the record that Wilma could be entitled to a significant settlement once the community property is divided between the couple. Wilma's potential portion of Eugene's savings plan he had through Entergy (valued at $184,256.70 as of September 30, 2005) is a factor in making a determination as to her need and is also a factors as to Eugene's ability to pay. While we know from Wilma's testimony that Eugene began putting money into the savings plan at Entergy mainly when he was married to Wilma, we cannot determine how much, if any, of the money Wilma would be entitled to receive if the plan is indeed community property, another issue we cannot determine from the record.

Further, we cannot determine from the record the status of the family residence. While we know from testimony that Eugene purchased the home prior to marrying Wilma, we do not know if the home was fully paid for prior to the marriage or if the home's equity was increased during the marriage. If it is the latter, Wilma may be entitled to receive half of that equity.

Therefore, we find that the record is incomplete regarding Wilma's need and Eugene's ability to pay and that further evidence is required for the proper adjudication of the case. As such, we  remand this case to the trial court for further proceedings not inconsistent with this opinion.

**CONCLUSION:**

Wilma raised three assignments of error. We reverse the trial court's determination that Wilma was unable to carry her burden that she was free from fault. We affirm the trial court's finding that Eugene's fault is irrelevant in this case. We remand this case to the trial court for a determination of Wilma's need and Eugene's ability to pay. The costs of this appeal are assessed to Eugene.

**REVERSED, AFFIRMED, AND REMANDED.**