# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-1271


CHERYL MATTHEWS DIGGS

VERSUS

JEFFREY ALLEN DIGGS


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE , NO. 2006-4181
HONORABLE PHYLLIS M. KEATY, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of John D. Saunders, Michael G. Sullivan, and James T. Genovese, Judges.


**AFFIRMED.**


William C. Vidrine
Vidrine & Vidrine
711 W. Pinhook
Lafayette, Louisiana  70503
(337) 233-5195
Counsel for Defendant/Appellant:
    Jeffrey Allen Diggs

Ronald S. Haley, Jr.
Haley & Associates
5353 Florida Boulevard
Baton Rouge, Louisiana  70806
(225) 928-2620
Counsel for Plaintiff/Appellee:
    Cheryl Matthews Diggs

**SULLIVAN, Judge.**

Ex-husband appeals the trial court's determination that his ex-wife proved she is entitled to final periodic support. For the following reasons, we affirm the judgment of the trial court.

*Facts*

Jeffrey and Cheryl Diggs were married June 3, 1995. One daughter was born of their marriage. On August 8, 2006, Cheryl filed for divorce as provided in La.Civ.Code art. 102. A judgment of divorce was granted on April 12, 2007.

Ancillary to the divorce, Cheryl sought final periodic support, claiming she was disabled and free from fault prior to filing for divorce. In his answer, Jeffrey admitted Cheryl was disabled but denied she was free from fault in causing the divorce. At trial, Cheryl testified that she suspected for a long time during the marriage that Jeffrey was having an affair. In 2005, she hired a private investigator whose investigation confirmed her suspicions. Cheryl's attorney cross-examined Jeffrey about emails written to him in 2002[1] to establish that the affair was ongoing at that time. The emails were suggestive of an intimate relationship between Jeffrey and the author.

Cheryl further testified that she was concerned about possibly contracting sexually-transmitted diseases from the beginning of the marriage and that she continuously asked Jeffrey if he was having an affair. According to Cheryl, Jeffrey always denied having an affair until he was faced with the evidence obtained by the private investigator. Cheryl also testified that she and Jeffrey went to counseling

---

[1]The trial court stated the emails produced by Cheryl were written in 2004; however, when Cheryl's attorney questioned Jeffrey about the emails, she referenced the emails as having been written in 2002.

because of her suspicions and that while Jeffrey's behavior improved during counseling, it reverted to what it had been prior to the counseling when the counseling ended.

Jeffrey admitted that the author of the suggestive emails was a woman he and Cheryl knew and that he had an affair with her, but he claimed the affair did not begin until December 2005. He testified that in 2002 he and the author were just friends and that the emails were the author's way of "joking." Jeffrey also testified that throughout their marriage, Cheryl was mean and controlling of him, their daughter, and his daughter who lived with them. He complained that she was verbally abusive, was not affectionate, and would push him away when he tried to show her affection. He testified that she told him in 2001 she did not love him and that she did not support him in his work or personal endeavors. Jeffrey described Cheryl as being cold and distant to his family, friends, and guests, including his boss. He further testified that after she was home full time due to her disability, she essentially did nothing in their home for him or the children, although her disability did not prevent her from doing so.

According to Jeffrey, he initiated counseling in 2001 to address his concerns, but it did not help. He claimed that he did not divorce Cheryl because he did not want his children to grow up in a home without both parents like he did. Jeffrey also claimed that Cheryl put him out of their home by having the door locks changed and changing the alarm system code.

Cheryl denied that she locked Jeffrey out of their home, but she did not deny his descriptions of her behavior toward him, the children, and others during the course of the marriage.

2

The trial court determined that Cheryl proved she is entitled to final periodic support. It found her suspicions of an affair were warranted in light of the suggestive emails and that her mean behavior was excusable under the circumstances. Jeffrey appeals, claiming that he *and* Cheryl were at fault in causing the breakup of their marriage.

### *Discussion*

Jeffrey urges that the trial court improperly found his adultery to be the sole, independent, and proximate cause of the failure of the marriage without considering Cheryl's habitually cruel behavior as an independent and proximate cause of the dissolution of marriage.

A spouse seeking final periodic support must "*affirmatively prove*" she is free from causing the failure of the marriage. *Floyd v. Floyd*, 03-1126, p. 4 (La.App. 3 Cir. 12/10/03), 861 So.2d 837, 839; La.Civ.Code arts. 111, 112. To meet this burden, she must prove she did not commit misconduct that is an "independent, contributory or proximate cause of the failure of the marriage." *Terry v. Terry*, 06-1406, p. 5 (La.App. 3 Cir. 3/28/07), 954 So.2d 790, 794. Habitual intemperance or excesses and cruel treatment or outrages are examples of fault that can defeat a claim for final periodic support. *Floyd*, 861 So.2d 837. However:

> A party is not deprived of alimony due to a reasonable justifiable response to the other spouse's initial acts. A spouse who perceives infidelity may become quarrelsome or hostile. Such a reasonable reaction does not constitute legal fault. The suspicion of adultery causes the breakup and not the reaction. A spouse who reacts should not be precluded from receiving alimony solely because of his or her own response.

*Adkins v. Adkins*, 42,076, pp. 4-5 (La.App. 2 Cir. 4/11/07), 954 So.2d 920, 923.

3

The trial court observed that Jeffrey's description of Cheryl's behavior equated to habitual intemperance and cruel treatment and that if he had left the marriage before entering into an affair, its opinion would have been different. However, the trial court also determined that while Cheryl did not have proof of Jeffrey's affair until 2005, the emails were of a "serious and intimate nature" that warranted her suspicions of adultery and justified the habitual intemperance and meanness described by Jeffrey.

We agree with the trial court's determination that Cheryl's behavior constituted cruel treatment and fault as contained in La.Civ.Code arts. 111 and 112, but we cannot reverse the trial court's determination that Cheryl established this behavior was a response to Jeffrey's affair unless the record establishes that the determination was an abuse of discretion. *January v. January*, 03-1578 (La.App. 3 Cir. 4/7/04), 876 So.2d 98.

The trial court was faced with a credibility determination. It accepted Cheryl's testimony that she was suspicious of Jeffrey having an affair from the beginning of the marriage and found her testimony credible. Without documents or objective evidence that contradicts Cheryl's testimony, we cannot reverse the trial court's credibility determination unless it is "so internally inconsistent or implausible on its face, that a reasonable fact-finder would not credit the witness's story." *Sportsman Store of Lake Charles, Inc. v. Sonitrol Sec. Sys. of Calcasieu, Inc.*, 99-201, p. 7 (La. 10/19/99), 748 So.2d 417, 421. The record does not contain such evidence; therefore, we cannot reverse the trial court's determination.

4

### *Conclusion*

The judgment of the trial court is affirmed, and all costs are assessed to Jeffrey Diggs.

**AFFIRMED.**