STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

TIFFANY M. VOISELLE

VERSUS

JOHN T. VOISELLE

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2015-1288-B
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and James T. Genovese, Judges.


**REVERSED IN PART; RENDERED IN PART; AFFIRMED IN PART.**



Benjamin D. James
Roy & Scott, Attorneys at Law
107 North Washington Street
Marksville,   LA 71351
(318) 240-7800
COUNSEL FOR DEFENDANT/APPELLEE:
    John T. Voiselle

Alissa Piazza Tassin
Attorney at Law
Post Office Box 429
Marksville, LA   71351
(318) 253-6423
COUNSEL FOR PLAINTIFF/APPELLANT:
    Tiffany M. Voiselle

**AMY, Judge.**

Following the parties' divorce, and after receiving interim periodic support, the former wife sought final periodic support. The trial court denied the request, finding that the former wife failed to prove that she was free from fault in the dissolution of the marriage, although the trial court did note that the husband's extramarital relationships were the primary cause for the divorce. The former wife appeals. For the following reasons, we reverse the trial court's determination that the former wife failed to demonstrate freedom from fault and further render a determination that she was free from fault in the dissolution of the marriage. However, we otherwise affirm the denial of final periodic support.

**Factual and Procedural Background**

The parties, Tiffany and John Voiselle, were married in September 1996. Two children were born of the marriage, an elder son in 2013 and a younger son in 2014. The record establishes that Mr. Voiselle informed Ms. Voiselle by text message on December 30, 2014, that he was leaving the marital home after having an extramarital relationship that resulted in the conception of a child outside of the marriage. Although Mr. Voiselle explained in that text message that he would be filing for divorce, Ms. Voiselle did so the following month. Thereafter, the parties entered into a consent judgment which addressed child custody issues, matters pertaining to child support, and interim periodic support to Ms. Voiselle. The consent judgment awarded Ms. Voiselle interim periodic support in the amount of $3,400.00 per month and made that award retroactive to the filing of divorce.

A judgment of divorce was entered on February 8, 2016. Prior to that judgment, however, Ms. Voiselle filed a Rule for Final Spousal Support, asserting that she "is in need of final spousal support for support and maintenance and that

she is free from fault for the dissolution of the marriage and that it is necessary to establish an amount of final spousal support to be paid to [sic] her behalf[.]" Following a hearing, the trial court denied Ms. Voiselle's request, finding that she failed to demonstrate that she was free from fault in the dissolution of the marriage.

In her resulting appeal, Ms. Voiselle assigns the following as error:

[1.]    The trial court erred as a matter of law by applying the incorrect standard of fault as it relates to plaintiff-appellant, Tiffany Voiselle.

[2.]    The trial court improperly denied plaintiff appellant's claim for permanent periodic spousal support, and thus improperly cast her with costs of same, when under the applicable law the facts support that she would be entitled to permanent periodic spousal support.

## Discussion

*Louisiana Civil Code Article 111 – Fault*

By her first assignment, Ms. Voiselle challenges the trial court's determination that she was at "fault" in the dissolution of the marriage. In addition to advancing the evidence in support of her case in chief, Ms. Voiselle asserts that even Mr. Voiselle's testimony concerning their relationship and her actions does not constitute fault on her part. Namely, she contends that evidence of their marriage difficulties do not constitute conduct of a serious nature that was a cause of the dissolution of the marriage, independent of Mr. Voiselle's extramarital relationships and his departure from the marital home.

Louisiana Civil Code Article 111 provides for the availability of spousal support as follows:

> In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage in accordance with the following Articles.

Within the context of final periodic support, a spouse is not deprived of spousal support merely because he or she "was not totally blameless in the marital discord." *Pearce v. Pearce*, 348 So.2d 75, 77 (La.1977). Rather, "fault" for purposes of claiming support "consists of serious misconduct, which is a cause of the marriage's dissolution." *Rusk v. Rusk*, 12-176, p. 6 (La.App. 3 Cir. 6/6/12), 102 So.3d 193, 198 (quoting *McKenna v. McKenna*, 09-295, p. 5 (La.App. 5 Cir. 10/27/09), 27 So.3d 923, 925). The conduct must not only be of a serious nature, but it must further be an independent, contributory, or a proximate cause of the divorce. *Pearce*, 348 So.2d 75. *See also Miller v. Miller*, 13-1043 (La.App. 3 Cir. 4/2/14), 161 So.3d 690, *writ denied*, 14-1607 (La. 10/31/14), 152 So.3d 154.

In consideration of a claim for support, fault has been equated to the former codal grounds for separation or divorce contained within the now vacated La.Civ.Code art. 138. *See Rusk*, 102 So.3d 193. *See also* La.Civ.Code art. 111, comment (c) providing that: "<u>Fault</u> continues to mean misconduct the [sic] rises to the level of one of the previously existing fault grounds for legal separation or divorce." For example, conduct such as "adultery, habitual intemperance or excess, conviction of a felony, cruel treatment or outrages, public defamation, abandonment, an attempt on the other's life, fugitive status, and intentional non-support" constitute fault. *Rusk*, 102 So.3d at 199 (citing *Bourg v. Bourg*, 96-2422 (La.App. 1 Cir. 11/7/97), 701 So.2d 1378; *Guillory v. Guillory*, 626 So.2d 826 (La.App. 2 Cir. 1993). Furthermore, petty quarrels, bickering, and fussing do not constitute cruel treatment within the context of a spousal support claim. *Miller*, 161 So.3d 690. Instead, a spouse's mental harassment of the other spouse must be of such a continued pattern so as to make the marriage unsupportable. *Id.*

Additionally, even a spouse's "cruel treatment" does not constitute fault if it is a reasonable, justifiable response to a spouse's preceding conduct. *Miller*, 161 So.3d 690, 696 (explaining for example that "a woman who reasonably believes that her husband has been unfaithful will not be deprived of alimony if she engages in cruel treatment because it is natural for a spouse in that situation to become quarrelsome or hostile" and that "[t]he suspicion of adultery causes the breakup and not the reaction.") (quoting in part *Diggs v. Diggs*, 08-1271, p. 3 (La.App. 3 Cir. 4/1/09), 6 So.3d 1030, 1032-33).

Certainly, it is the claimant seeking final periodic support who bears the burden of proving freedom from fault. *Diggs*, 6 So.3d 1030. In this instance, the trial court found that Ms. Voiselle failed to do so. While the trial court acknowledged that Mr. Voiselle admitted to having multiple extramarital relationships during the course of the marriage and to having fathered two children outside of the marriage, the trial court expressed in reasons for ruling that "there are clearly several reasons why this marriage did not succeed[.]" The trial court went on to explain in oral reasons for ruling that:

> It is long been said that adultery is not the cause of the break up of a marriage; it is a symptom that something is wrong. The simple fact that John chose to have multiple affairs clearly shows that something was wrong. . . .
>
>    . . . .
>
> In applying applicable law to the facts in the case at bar, it is quite clear that Tiffany has not met her burden to prove that she is totally free from fault in the break-up of her marriage to John. It is quite evident to this Court that this marriage was doomed from the beginning due to the problems that occurred at the time of the wedding and the tension and problems that remain between Tiffany and the Voiselle family thereafter. These problems were exacerbated by the fact that John and Tiffany spent so little time together due to John's work schedule, and when together, John was prevented from spending quality time with his family.

4

This Court readily recognizes that this is somewhat of a harsh ruling considering John's behavior during the marriage. His behavior certainly was not admirable nor justified. However, instead of terminating the marriage when a second woman became pregnant with his child, John could have terminated the marriage on prior occasions based on the impact of issues between Tiffany and the Voiselle family. Simply looking at this case from the outside, one would automatically imagine that the break up of the marriage is 100% John's fault, however, the evidence confirms otherwise. The adultery was wrong and certainly John is at fault. However, for purposes of final spousal support the claiming spouse must be entirely [ ] free from fault and Tiffany failed to prove more probable than not this legal requirement. Evidence presented by Tiffany in her case in chief confirmed otherwise much less the evidence presented by John in defense.

On review, we are mindful that a trial court's finding of fault is factual in nature and is therefore considered pursuant to the manifest error standard of review. *Terry v. Terry*, 06-1406 (La.App. 3 Cir. 3/28/07), 954 So.2d 790. However, having reviewed the evidence, we conclude that the trial court was manifestly erroneous in its determination that Ms. Voiselle failed to demonstrate freedom from fault. Simply, the record does not reveal conduct on her part that constitutes serious misconduct, nor does it reveal that tensions within the marriage were an independent, contributory, or a proximate cause of the divorce. *See Pearce*, 348 So.2d 75.

First, it is clear that the marriage dissolved upon Mr. Voisselle's leaving the family home as evidenced by both the text message entered into evidence and by the parties' testimony.[1] No one disputes that occurrence as the precipitous event.

---

[1] The text message, entered into evidence explains that:

Tiffany I am filing for divorce. The same thing as last time has happened again. I cannot keep hiding. I am very sorry for ruining your life but you deserve the truth. I have another baby on the way in 6 months. Please do not make [the minor children of the marriage] hate me. I need to talk to [the eldest son] but I don't know how and when. I know your family will hate me for this but like I said I can't do it anymore. I know you know something because you have been asking. I didn't want to ruin Christmas but I

The parties dispute, however, whether Ms. Voisselle was also at fault in the dissolution of the marriage due to her actions and temperament over the course of the marriage. Namely, Mr. Voisselle suggested at trial, as he does before this court, that Ms. Voisselle was not affectionate toward him, sought to distance him and their children from his family, and that the two had limited sexual relations during the last two years of the marriage. However, such conduct, even as described by Mr. Voisselle does not suggest that Ms. Voisselle was at "fault" in the sense of "conduct or substantial acts of commission or omission by the wife violative of her marital duties and responsibilities." *Pearce*, 348 So.2d at 77.

Mr. Voisselle and his witnesses instead described what is more appropriately viewed as points of disagreement and periods of distance during the eighteen-year marriage. Even collectively, the instances complained of by Mr. Voiselle are not objectively misconduct, let alone serious misconduct, on the part of Ms. Voiselle. Notably, Mr. Voisselle was frequently absent from the home due to his work schedule, whether in or out of state. He suggested that Ms. Voiselle should have made more of an effort to travel to visit with him during his absences, especially when he was located within driving distance of the family home. However, within the context of legal fault, it is difficult to see how such an inference is any more negative toward Ms. Voiselle's conduct than toward his lack of willingness to travel to and from work rather than be separated from his family. As described, her decision not to travel with the children to visit with him was something that Mr. Voiselle disagreed with. It did not constitute misconduct.

---

know I still have. I can't call. I can't talk to you right now. I am sorry. I will take care of the kids. I will not let them be without.

Additionally, and although Mr. Voiselle asserted that he would have liked for his wife to be more affectionate toward him, it is again difficult to find "fault" on the part of a spouse who explained that she did not feel comfortable with public displays of affection. Ms. Voiselle testified, instead, that she physically expressed affection while in private. While the two may have differed in their preferences in this regard, such a difference in temperament does not constitute fault. Similarly, and while Mr. Voiselle suggested that the two had limited sexual relations during the last two years of marriage, there is no evidence that the marriage dissolved due, in part, to this lesser interaction. Further, and in addition to Ms. Voiselle's denial of that claim, the evidence undermines Mr. Voiselle's assertion. Rather, the couple's youngest son was nine months of age at the time the petition for divorce was filed. Additionally, Ms. Voiselle explained that, although she was not medically able to have sexual relations for a period after the birth of the child due to complications in the pregnancy, she became "suspicious" when Mr. Voiselle refused to engage in sexual relations several times after she was medically released to continue that activity. Again, while Mr. Voiselle testified to his desire for more frequent contact, assignment of "fault" to one party for a chill in that relationship is not established in the record.

Finally, both Mr. Voiselle and the trial court found import in an "alienation" of Mr. Voiselle's relationship from his family. However, the record does not reflect such an alienation, let alone due to the fault of Ms. Voiselle. All parties testified that Ms. Voiselle did not have a close relationship with Mr. Voiselle's family following some difficulties at the time of their wedding (eighteen years prior to the divorce). Notwithstanding those difficulties, Ms. Voiselle did maintain relations with the family, with Mr. and Ms. Voiselle making periodic holiday visits

to the Voiselle family home, approximately fifty minutes away. Perhaps the contacts were neither as frequent nor as warm as Mr. Voiselle reported to have wanted at the time of trial, however, there is nothing to indicate that the tensions constituted serious misconduct on the part of Ms. Voiselle. Instead, Ruth Reed, Mr. Voiselle's mother, indicated that she was able to visit the couple's children in the family home,[2] although she felt that she was required to telephone before visiting and that the elder son had been allowed to spend a couple of nights with her. Ms. Reed further admitted that she did not sense tension between her and the elder son and that she had been included in the family's life events. Again, this evidence, at most, demonstrates tensions within the marriage that, at times, led to argument and bickering. Yet, such behavior does "not constitute cruel treatment for purposes of denying alimony." *Rusk*, 102 So.3d at 199 (quoting *Noto v. Noto*, 09-1100, p. 7 (La.App. 5 Cir. 5/11/10), 41 So.3d 1175, 1180). Recall, even upon the trial court's assumption that Ms. Voiselle could have nurtured a better relationship with her husband's family, a spouse is not denied support merely because he or she "was not totally blameless in the marital discord." *Pearce*, 348 So.2d at 77. As described, there is no evidence that the type of tension or strained relationships within the Voiselle family was the result of serious misconduct on the part of Ms. Voiselle. Neither does there appear to be indication that the marriage dissolved due to that tension. In fact, Ms. Reed explained that the relationship with Ms. Voiselle had improved over the years.

In sum, the trial court manifestly erred in finding that Ms. Voiselle failed to prove freedom from fault in the dissolution of the marriage. Rather, she

---

[2] Additionally, she explained that Ms. Voiselle asked her to stay with the elder son "a couple of months" while the younger son was hospitalized following his birth.

demonstrated that the dissolution of the marriage was due to Mr. Voiselle's departure from the family home following the final extramarital relationship that resulted in a pregnancy outside of marriage. Otherwise, Ms. Voiselle explained that she tried to make the marriage a happy one, that she attended marriage counseling following an earlier extramarital relationship that resulted in a child being born to another woman, and that she tried to provide a pleasant home for the family. Although she admitted periods of tension and strain in her relationship with Mr. Voiselle's family, she adequately demonstrated that any such strain did not result from fault within the sense of La.Civ.Code art. 111. Accordingly, we reverse the trial court's factual finding as to Ms. Voiselle's freedom from fault in the dissolution of the marriage. We turn to consideration of the remainder of her claim for final periodic spousal support.

*Louisiana Civil Code Article 112 – Determination of final periodic support*

In light of the trial court's finding as to fault, it did not alternatively address La.Civ.Code art. 112 for the determination of final periodic support in its reasons for ruling.[3] Ms. Voiselle, therefore, seeks such a determination in this court and addresses both her need of support and Mr. Voiselle's alleged ability to continue to provide spousal support. We address that claim below, first noting that "[a]n appellate court will generally not adjudicate issues not ruled upon by the trial court[.]" *Terry*, 954 So.2d at 796. However, in the event an "appellate court has all of the facts and testimony and is able to pronounce with certainty in the case,

---

[3] However, the trial court explained that it found that Mr. Voiselle had the ability to pay at the time it denied Mr. Voiselle's motion for involuntary dismissal due to lack of evidence regarding Mr. Voiselle's earnings. The trial court remarked that it was the ability to pay, rather than earnings, that was before the court. The trial court explained that Mr. Voiselle had been able to pay $5,500.00 per month in combined child and spousal support.

that appellate court should render such judgment on appeal as the trial court should have rendered at trial." *Id.* The appellate court's review is de novo. *Id.*

"However, when an appellate court finds that the interests of justice dictate that further evidence is required for the proper adjudication of the case, then the appellate court should remand the case to the trial court." *Terry*, 954 So.2d at 796. In this case, the parties presented their full cases as to both fault per La.Civ.Code art. 111 and for determination of final periodic support per La.Civ.Code art. 112. In this instance, we find that the record presents such facts and testimony sufficient to render judgment on Ms. Voiselle's claim. Therefore, we turn to de novo consideration of the determination as to the appropriateness of an award of final periodic support.

In this regard, Article 112(A) provides that: "When a spouse has not been at fault prior to the filing of a petition for divorce and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support[.]" The award is thereafter made in accordance with Paragraph C, which lists various factors for consideration "in determining the amount and duration of final support[.]"[4]

---

[4] Louisiana Civil Code Article 112(C) provides that "[t]he court shall consider all relevant factors in determining the amount and duration of final support, including:"

> (1) The income and means of the parties, including the liquidity of such means.

> (2) The financial obligations of the parties, including any interim allowance or final child support obligation.

> (3) The earning capacity of the parties.

> (4) The effect of custody of children upon a party's earning capacity.

> (5) The time necessary for the claimant to acquire appropriate education, training, or employment.

In support of her assertion that she is need of support, Ms. Voiselle testified that both she and Mr. Voiselle agreed at the time their eldest son was a baby that she would not work. She further contends that, without a continuation of spousal support, she would have to sell the family home, where she and the children have continued to live, and that she would have to buy a less expensive vehicle. She further suggests that she could possibly have to move into her parent's home with the children for assistance. However, this evidence of need is based upon her desire not to return to work and to stay at home with the younger child until he reaches school age. At trial, she sought continuation of spousal support so that she might retrain as a teacher in order to work at a schedule that would be consistent with the children's school schedule.

On review, however, we conclude that Ms. Voiselle has not demonstrated "need" within the context of La.Civ.Code art. 112. Simply, her evidence is insufficient in this regard. Rather than presenting evidence as to her ability to earn, her past earnings, and the costs associated with the necessities of life, Ms. Voiselle seemingly sought a continuation of her existing lifestyle upon an assumption of no earnings.[5] The position is evidenced by her testimony regarding her desire not to

---

(6) The health and age of the parties.

(7) The duration of the marriage.

(8) The tax consequences to either or both parties.

(9) The existence, effect, and duration of any act of domestic abuse committed by the other spouse upon the claimant, regardless of whether the other spouse was prosecuted for the act of domestic violence.

[5] However, La.R.S. 9:326(A), entitled "Determination of income for spousal support; evidence[,]" anticipates that evidence will be introduced regarding the parties income and provides as follows:

Each party shall provide to the court a verified income statement showing gross income and adjusted gross income, *together with documentation of current and*

return to work and her testimony regarding having to sell the marital home and her vehicle of choice. Yet, La.Civ.Code art. 112 addresses "need" within the context of spousal support, which has been held to be limited "to an amount sufficient for maintenance, rather than the continuation of an accustomed lifestyle." *McClanahan v. McClanahan*, 14-670, p. 15 (La.App. 5 Cir. 3/25/15), 169 So.3d 587, 597.

Furthermore, Ms. Voiselle merely assumed an inability to earn, preferring to stay at home. However, Ms. Voiselle testified that she holds a college degree in business and worked for a large part of the eighteen years of the marriage.[6] When asked about her ability to work in that field, she only generally stated that she obtained a degree while the couple lived in Baton Rouge, but that there was "not very much opportunity for that" in Avoyelles Parish. Ms. Voiselle did not

---

*past earnings.* Suitable documentation of current earnings shall include but not be limited to pay stubs or employer statements. The documentation shall include a copy of the party's most recent federal tax return. A copy of the statement and documentation shall be provided to the other party. When an obligor has an ownership interest in a business, suitable documentation shall include but is not limited to the last three personal and business state and federal income tax returns, including all attachments and all schedules, specifically Schedule K-1 and W-2 forms, 1099 forms, and amendments, the most recent profit and loss statements, balance sheets, financial statements, quarterly sales tax reports, personal and business bank account statements, receipts, and expenses. A copy of all statements and documentation shall be provided to the other party.

(Emphasis added.) While Ms. Voiselle provided an "affidavit of income & expenses on a per month basis[,]" she merely reported "$ 0" for both "Total Gross Monthly Income" and "Total Net Monthly Income[.]" She included no information regarding her past earnings that could have assisted the court in assessing a reference point for her earnings.

In *Short v. Short*, 11-1084 (La.App. 5 Cir. 5/22/12), 96 So.3d 552, the fifth circuit concluded that the trial court did not abuse its discretion in awarding interim spousal support in a situation where a claimant failed to document her current and past earnings as required by La.R.S. 9:326(A). The present matter differs, however, as the award in *Short* was for interim spousal support, the purpose of which is to maintain the standard of living of the parties' during the marriage. The present matter differs, however, insofar as Ms. Voiselle had received more than one year of interim spousal support at the time of the hearing on the final periodic support. The question of whether Ms. Voiselle is "in need" for purposes of La.Civ.Code art. 112 poses a different question insofar as it is directed at her continued need for maintenance.

[6] She estimated that she worked twelve years over the course of the marriage.

12

demonstrate that she had undertaken an effort to pursue work opportunities, whether in that or another field. She further acknowledged that she had owned her own embroidery business for five to six years before the birth of the couple's younger child, but dismissed returning to that type of business as other individuals were offering that service. Finally, and even with regard to her desire to obtain training in order to become a teacher, Ms. Voiselle presented very little formal evidence in that regard and offered no specific information regarding the necessary curricula. Instead, when asked by counsel for Mr. Voiselle in what way she had pursued schooling or another job, she denied that she had taken measures beyond "looking into it" or "get[ing] online."[7]

---

[7] The trial court additionally questioned Ms. Voiselle in this regard, as indicated in the passage as follows:

> Q.      . . . .Tell me about your work and wanting to be a teacher, what kind of teacher you want to be?
>
> A.      Elementary school.
>
> Q.      And have you looked into what you need to do at all, like anything . . .
>
> A.      I haven't.
>
> Q.      Have you looked into anything a school or contacted a school board, department of education or anything and said what do I need to do, I have a business degree I want to be a teacher.
>
> A.      You have to go through in Pineville the school I can't think of it off the top of my head. It's not Louisiana Tech what's the school in Pineville? LC, Louisiana College, that's right. Which if you have a degree you can go to Louisiana College to get a teaching degree because instead of going four years of school that's when you can go through their program because you already have your prerequisites and everything done is the way they look at it. So going to the . . . do the education program after having a degree you get it done quicker.
>
> Q.      And how long would it take?
>
> A.      The program is like a year to two years or something like that. I'm not exactly sure.
>
> Q.      Do you know whether or not you can teach today with your degree?
>
> A.      I think you can teach but you have to do the same thing as well.

Undoubtedly, Ms. Voiselle presented evidence of the expenses of maintaining her mode of pre-divorce lifestyle. However, we find that evidence insufficient for her pursuit of final periodic spousal support which anticipates consideration of whether she "*is in need of support*, based on *the needs of that party* and the ability of the other party to pay[.]" *See* La.Civ.Code art. 112(A) (emphasis added). The record indicates that Ms. Voiselle has a formal education, experience as a business owner, and a significant work history. Notwithstanding her preference to not return to the work force while the couple's youngest child remains at home, Ms. Voiselle has not further demonstrated that she "is need" nor what her "needs" may be in light of at least some type of earning potential. She instead relied only on the assumption that she would not return to work. We find such evidence to be insufficient to have satisfied Ms. Voiselle's burden of proof under La.Civ.Code art. 112. Therefore, we find no error in the trial court's denial of the rule for final periodic support.

This assignment lacks merit.

## DECREE

For the foregoing reasons, the trial court's determination that the appellant, Tiffany M. Voiselle, failed to prove that she was free from fault in the dissolution of the parties' marriage is reversed and a determination that Ms. Voiselle was free from fault is rendered. However, the trial court's denial of the appellant's rule for final periodic support is affirmed. Costs of this proceeding are assessed equally to Ms. Voiselle and to the appellee, John T. Voiselle.

**REVERSED IN PART; RENDERED IN PART; AFFIRMED IN PART.**