CARAWAY, J.
_[iThis appeal involves incidental demands in covenant marriage divorce proceedings. The trial court awarded joint custody of the two minor children of the marriage, child support, and interim and final periodic spousal support. In the judgment, the trial court awarded joint custody and child support with domiciliary status to the mother, but did not specify the amount of physical custody for each party. Finding the child custody and support rulings incomplete, we dismiss the appeal for those matters and remand for further proceedings. The remainder of *937 the judgment concerning interim and final spousal support is affirmed.

Facts and Procedural Background

John Campbell Shirley (“John”) and Monica Shirley, Nee Dusenbery (“Monica”), entered into a covenant marriage on December 6, 1997. Two children were born of the marriage, ACS, born August 12, 1998, and VGS, born March 22, 2001. In 2008, Monica filed for judgment of separation from bed and board pursuant to La. R.S. 9:307(B) on the ground of habitual intemperance on the part of John. In the petition, she also filed for incidental relief such as periodic spousal support, child support, and child custody. This petition was followed by a brief reconciliation period in late 2009. Nevertheless, on June 3, 2010, John filed an answer to Monica’s original petition for separation and a reconventional demand for divorce on the ground of adultery. In August 2010, he amended his answer and reconventional demand seeking joint custody of the children, but domiciliary status of only ACS.
[2On September 7, 2010, Monica filed a motion to dismiss her petition for separation from bed and board due to the parties’ 2009 reconciliation. On the same day, she filed a new petition for separation from bed and board that was substantively the same as the first. On March 25, 2011, the trial court granted the motion to dismiss the original petition on the ground of reconciliation. John disputed that reconciliation occurred as a legal matter. However, the trial court ruled that the parties had in fact reconciled. This judgment was never appealed.
After a hearing on January 31, 2012, John orally amended his petition for divorce. He alleged that the parties had been living separate and apart for two years and that he was entitled to a covenant marriage divorce pursuant to La. R.S. 9:307(A)(5). Monica did not object to this amendment of the action or dispute the parties’ two years of separation. The trial court granted a divorce on this oral petition on the same day. The hearings on child custody, child support, and periodic spousal support occurred in January, February and June of 2012.
The evidence at trial regarding interim and final periodic support was adduced from the parties’ testimony and John’s accountant, David Johnston (“Johnston”). Monica testified that she had no current employment, but was searching for a job. She stated she inquired about jobs as a restaurant server at several locations but never applied because she would be unable to be at home when her children would arrive home from school. Monica testified that she had begun nursing school prior to her marriages to John and a previous husband. At that time, she needed only two semesters to obtain a ^nursing degree but would have to start anew if she were to go back to nursing school. Additionally, she testified she had experience as a restaurant server and bartender, as well as experience managing her mother’s restaurant in Houma. Furthermore, the parties agreed at the outset of the marriage that Monica would be a stay-at-home mother.
Monica executed an affidavit on June 20, 2012, listing her expenses for purposes of establishing her claim to the various support awards. It showed her total monthly net income as zero and her total monthly expenditures as $10,220 per month, with the largest portion being for housing at $3,500 per month. However, the trial court found that many of the expenses in the affidavit were admitted estimates and that many items were not necessities.
John and Monica’s 2008 joint tax return was entered into evidence showing a total income of $453,877 and an adjusted gross income of $440,978. Johnston testified regarding John’s income for 2009-2011 from *938 various sources, such as his income as trust beneficiary, his income from various investments, his income from royalties from oil and gas leases, and income from his catering business, Campatori Catering, LLC, of which he and Monica are the only members. Those income sources totaled $256,955 in 2009, and $229,010 in 2010.[1] Additionally, Johnston testified that John’s projected income in 2011 would be $176,747.[2]
| Contesting John’s presentation of his income, Monica introduced into evidence John’s monthly expenses of $85,000, claiming that this should be the basis of determining his income rather than his tax returns or Johnston’s income assessment. Also introduced into evidence was a number of bank statements from various banks where the parties held accounts. The parties stipulated that John had liquid assets of at least $500,000.
Concerning the issue of fault, Monica testified that she had two sexual relationships. Prior to the parties’ reconciliation in late 2009 and after her original petition for separation from bed and board, she admittedly had a sexual relationship with a man named Webb. The only other adultery specifically alleged by John was an affair with a man named Rhodes. Monica testified that initially they had only a platonic relationship, but she admitted it became sexual as of August 11, 2010, after John’s reconventional demand in the summer of 2010. Rhodes’s deposition was also introduced into evidence, in which he substantiated Monica’s testimony by stating that the relationship became sexual sometime in August 2010. No other evidence of adulterous fault was presented.
After considering all the evidence, the trial court found that there had been no post-reconciliation fault[3] by Monica and that she was in need of support. The court ordered John to pay interim spousal support in the amount of $8,600 retroactive to September 7, 2010, terminating 180 days after the date of divorce on June 30, 2012, for a total amount of $75,600. |sThe judgment further ordered John to pay Monica final periodic support in the amount of $2,200 per month for a period of three years beginning July 1, 2012, and terminating on July 1, 2015.
The issues of child custody and support were also litigated during the trial of these matters. The trial court ordered joint custody of the children and designated Monica as the “primary custodial or domiciliary parent.” The trial court also ordered a joint custody implementation plan (“JCIP”) be submitted within 30 days with the following provisions:
(1) No overnight guests of the opposite sex to whom the parties are not related.
(2) No consuming illicit drugs or alcohol when having the children.
(3) Provide for regular telephone and email communication time with whomever [sic] is the non-custodial parent at that time.
(4) A plan for how to share information when the other party has the child.
(5) Regular counseling for all parties to address communication and other issues for at least one year from the *939 date of this judgement [sic ], as prescribed in Dr. Thigpen’s report.
(6) Mr. Shirley shall enroll in and successfully complete the La. Tech Domestic Abuse Prevention program or a Court approved program for anger management within 90 days of this judgment.
(7) Both parties shall attend Children in the Middle within 90 days of this judgment.
(8) Monica Shirley is to follow the parenting recommendations found in Dr. Thigpen’s report.[4]
The judgment also stated the following in regard to the JCIP:
| fiAll in accordance with a Joint Custody Implementation Plan to be submitted at a future date. Each party shall submit the Joint Custody Implementation Plan within 30 days of the Judgment herein together with any memorandum in support thereof. Upon receipt of the requested documentation the judge will review and adopt a Joint Custody Implementation Plan.
The trial court’s judgment therefore did not specify the amount of time that each party is to have physical custody of the children.
The judgment also ordered John to pay child support to Monica in the amount of $2,799 per month in accordance with the joint obligation Worksheet A with credit given to John for $542 for a direct monthly payment to the Learning Tech Quest School for a total child support payment of $2,257.44 per month. The obligation was made retroactive to July 15, 2010, for an arrearage of $71,109.36 subject to a credit of $27,500 for previously paid support, leaving an arrearage of $43,609.36 as of February 15, 2013.
Regarding John’s ability to pay for both spousal and child support, the trial court considered the income figures presented by Johnston. The trial court found that Johnston’s testimony was helpful but not entirely conclusive and concluded that the report he prepared and opinions he gave were somewhat circumspect. Rather, the trial court made an upward adjustment for John’s estimated income for 2011. He took into account the estimated figure of $176,747 and considered John’s spending habits and sources of income. Ultimately, the trial court averaged John’s income according to Johnston’s report for the years 2010 and 2011 for a figure of $203,000 per year.
It is from this judgment that John appeals.
| tDiscussion
I.
John argues on appeal that the trial court erred in naming Monica the domiciliary parent. He also asserts that he has not been awarded a sufficient amount of physical custody, arguing instead for what he calls “shared custody.” In another related matter, John disputes the child support obligation imposed by the trial court’s ruling. Finally, as apparent from the trial court’s judgment and discussed extensively by the parties at oral argument before this court, the trial court’s judgment concerning physical custody is incomplete in that it only ordered the parties to “submit the Joint Custody Implementation Plan within 30 days of the Judgment herein together ■with memorandum in support thereof.” That JCIP for the designation of the sharing of actual physical custody remains *940 pending. Because of this situation, as shown by the following law for a child custody and support dispute, we find that the trial court’s partial judgment in this matter requires dismissal of these matters for this appeal.
When determining custody in a proceeding of divorce or thereafter, the court shall award custody of a child in accordance to the best interests of the child. La. C.C. art. 131. In the absence of agreement, the court shall award custody to the parents jointly unless custody in one parent is shown by clear and convincing evidence to serve the best interest of the child. La. C.C. art. 132. To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally. La. R.S. 9:335(A)(2)(b). In the decree of joint custody, the court shall designate a |8domiciIiary parent except when there is an implementation order to the contrary or for other good cause shown. La. R.S. 9:335(B)(1). The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents. La. R.S. 9:335(B)(2).
Louisiana Revised Statutes section 9:335(A)(1) provides: “In a 'proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.” La. R.S. 9:335(A)(1) (emphasis added). Next, La. R.S. 9:335(A)(2) states that the “implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured frequent and continuing contact with both parents.” La. R.S. 9:335(A)(2) (emphasis added).
Additionally, Third Judicial District Court Rule 38.3, titled “Submission and Implementation of Joint Custody Plans” states, “In cases involving any dispute as to custody, it shall be required that all parties specifically comply with the provisions of Article 146 of the La. Civil Code, noting particularly that there shall be submitted a custody implementation plan to the court prior to the issuance of a joint custody decree.” (Emphasis added).
In calculating the total child support obligation, La. R.S. 9:315.8 mandates that the trial court consider the amount of time that a parent will have physical custody of the children. It states with emphasis added:
|fl(l) In cases of joint custody, the court shall consider the period of time spent by the child with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time.
(2) If under a joint custody order, the person ordered to pay child support has physical custody of the child for more than seventy-three days, the court may order a credit to the child support obligation. A day for the purposes of this Paragraph shall be determined by the court; however, in no instance shall less than four hours of physical custody of the child constitute a day.
La. R.S. 9:315.8(E). Joint custody, for the purpose of this statute, is “a joint custody order that is not shared custody as defined in R.S. 9:315.9.” Id. Shared custody is defined as “a joint custody order in which each parent has physical custody of the child for an approximately equal amount of time.” La. R.S. 9:315.9(A)(1). If the joint custody order is “shared custody” the support obligation is mandated by statute to be calculated differently using Worksheet B. See La. R.S. 9:315.9. When Worksheet A is utilized, the trial court may adjust the designated amount of the child support obligation. See La. R.S. 9:315.8.
*941 A final judgment is appealable in all causes in which appeals are given by law, whether rendered after hearing, by default, or by reformation under Article 1814. La. C.C.P. art 2088(A). To determine the finality of the judgment for purposes of immediate appeal, La. C.C.P. art. 1915 clearly states that “[w]hen a court renders a partial judgment ... as to one or more but less than all of the claims, demands, issues, or theories, ... the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.” La. C.C.P. art. 1915(B)(1) (emphasis added).
|TnAs seen by these statutory provisions, the allocation of time periods for the sharing of joint custody is a factor for determination of the amount of the child support obligation. Although the trial court utilized Worksheet A in this instance, it was nevertheless under the directive to consider the amount of time that the parties would share custody in fixing the child support obligation. La. R.S. 9:315.8. Likewise, John’s argument for shared custody under La. R.S. 9:315.9 has not been completely foreclosed until the allocation of time through a final JCIP has been made. The case is remanded for finalization of the child custody ruling and for reconsideration of the child support award.
II.
Although we find the child custody portion of the judgment is not final, we do find that the portions of the appeal regarding spousal support are final judgments and may be considered at this time. John argues that the trial court’s determination of his income caused error in the awards of both interim and final periodic spousal support. The interim spousal support award was $3,600 per month and the final periodic support was $2,200 per month for three years. While the amount of income for 2008, $453,877, was not in dispute, the trial court utilized the average of the income reported by Johnston for 2010 and Johnston’s 2011 estimate, which was $203,000. John argues that the trial court abused its discretion because Monica presented no contradictory evidence and because the trial court deviated upward from the income estimate for 2011 determined by Johnston.
Inin a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate the marriage. La. C.C. art. 111. Upon motion of a party or when a demand for final spousal support is pending, the court may award a party an interim spousal support allowance based on the needs of that party, the ability of the other party to pay, and the standard of living of the parties during the marriage, which shall terminate upon the rendition of a judgment of divorce. La. C.C. art. 113. The trial court is afforded much discretion in determining an award of interim spousal support, and such a finding will not be disturbed absent a clear abuse of discretion. Jones v. Jones, 38,790 (La.App.2d Cir.6/25/04), 877 So.2d 1061, citing Bagwell v. Bagwell, 35,728 (La.App.2d Cir.3/08/02), 812 So.2d 854; McDermott v. McDermott, 32,014 (La.App.2d Cir.6/16/99), 741 So.2d 186; see also Gremillion v. Gremillion, 39,588 (La.App.2d Cir.4/06/05), 900 So.2d 262.
Regarding the determination of the amount of a final periodic spousal support award, La. C.C. art. 112(B) provides:
The court shall consider all relevant factors in determining the amount and du *942 ration of final support. Those factors may include:
(1) The income and means of the parties, including the liquidity of such means.
(2) The financial obligations of the parties.
(3) The earning capacity of the parties.
(4) The effect of custody of children upon a party’s earning capacity.
112(5) The time necessary for the claimant to acquire appropriate education, training, or employment.
(6) The health and age of the parties.
(7) The duration of the marriage.
(8) The tax consequences to either or both parties.
The basic tests for the amount of spousal support are the needs of the claimant spouse and the other spouse’s ability to pay. Gremillion, supra. Difficulty in finding employment suitable for the spouse’s age, training, and ability is a proper consideration in determining whether a claimant is voluntarily underemployed. Patton v. Patton, 37,401 (La.App.2d Cir.9/24/03), 856 So.2d 56, citing Falterman v. Falterman, 98-158 (La.App.5th Cir.1/13/99), 726 So.2d 1023; Fountain v. Fountain, 93-2176 (La.App.lst Cir.10/07/94), 644 So.2d 733. The trial court is vested with great discretion in making final periodic support determinations, and its judgment will not be disturbed absent a manifest abuse of discretion. Id.
The trial court’s use of approximately $200,000 as John’s annual income was not an abuse of discretion. In the preceding years, 2008-2010, for which tax returns were filed, the income of the community well exceeded that amount of income. That income, including any fruits of John’s separate property, continued to be derived solely by John or attributable to his property after the parties’ divorce. Johnston’s estimate of a possible lower amount of income for 2011 before the finalization of a tax return was unpersuasive to the trial court, and that ruling from our review of the record is not an abuse of the trial court’s discretion.
11sRegarding the actual amounts of the interim and final support awards, we likewise find no abuse of discretion. The $3,600 per month for interim spousal support was clearly within the standard of living enjoyed by the Shirleys, yet less than one-fourth of John’s annual income of $203,000 as determined by the trial court.
In awarding Monica $2,200 per month in final support for three years, the trial court relied upon factor 5 of Article 112(B), allowing a period of support for Monica to acquire appropriate education and training to enter the workforce. The evidence shows that the child custody situation has impacted Monica’s ability to become employed. The evidence also shows that ACS required special schooling due to behavioral disorders, which affects the determination under factor 4 of Article 112(B). The trial court correctly considered her ongoing essential expenses at a much lower level than Monica reported. We therefore do not find that the award for final spousal support was an abuse of discretion.
III.
In his last assignment of error, John asserts that Monica is not entitled to final periodic support because she is not free from fault. John argues that fault on the part of Monica, specifically, an admitted sexual relationship with Rhodes, occurred after the parties’ reconciliation in 2009 and while Monica’s petition for separation was pending. He argues that this bars her from recovering final spousal support. John supports this view by refer *943 ence to rulings under the law for separation actions predating the 1990 revision of Louisiana’s divorce law when spousal fault could occur during an action 114for separation.[5] He contends this law was revived by the covenant marriage regime. Additionally, John asserts that the relevant petition for divorce in this case is his orally amended petition of January 31, 2012, on which the divorce was granted on the ground of living separate and apart for two years. Monica’s admitted relationship with Rhodes occurred before that time.
The regime of covenant marriage, added to our law in 1997, does allow proceedings for separation in addition to providing for divorce. La. R.S. 9:272, et seq.; La. R.S. 9:307, et seq. Because under La. R.S. 9:293 “all of the laws governing married couples generally” apply in covenant marriage, the spousal support obligation of Civil Code Article 111 applies to couples in a covenant marriage. See also La. R.S. 9:308(D) (specifically listing spousal support as incidental relief in proceedings for separation for a covenant marriage).
Article 111 provides in pertinent part that “[i]n a proceeding for divorce or thereafter, the court may award ... final periodic support to a party ... who is free from fault prior to the filing of a proceeding to terminate the marriage.” La. C.C. art. Ill (emphasis added). Only misconduct of a serious nature, providing an independent contributory or proximate cause of the breakup, equates to legal fault. Id.; Allen v. Allen, 94-1090 (La.12/12/94), 648 So.2d 359. The policy behind this rule is that it is unfair to a claimant spouse to bar final support when her conduct is not [ )5the cause of the breakup of the marriage. See Kenneth Rigby, The 1997 Spousal Support Act, 58 La. L.Rev. 887, 900-01 (1998).
Pretermitting John’s contentions regarding the issue of fault during the pen-dency of Monica’s petition for separation, we find that the first interpretation of the rule concerning spousal fault under Article 111 must be made in consideration of John’s pleadings for divorce. John filed an answer and reconventional demand for divorce on the ground of adultery on June 3, 2010. His action of divorce was certainly a proceeding “to terminate the marriage.” Monica’s admitted sexual relationship with Rhodes began in August 2010, during the pendency of John’s action for divorce. From this assessment of the timeline of events, we hold that Article 111 prevents consideration of Monica’s actions in August 2010 from amounting to fault which would bar her recovery of spousal support. We view John’s filing to end the marriage in June 2010 as falling within the bright-line rule of Article 111. Events after such filing do not prevent consideration of Monica’s claim for spousal support. The ultimate grounds that John established for the divorce do not change the effect of the pendency of his action under Article 111 and its effect on the issue of fault.

Conclusion

For the reasons stated above, we affirm the trial court’s order for interim periodic spousal support and order for final periodic spousal support. We find the judgments regarding child custody and support incomplete for failure to include allocation of physical custody. Accordingly, because physical custody was not determined, we remand for a | ^determination of physical *944 custody of the children and reconsideration of the child support award. Costs of these proceedings are assessed to appellant.
APPEAL DISMISSED IN PART; JUDGMENT AFFIRMED IN PART; REMANDED FOR FURTHER PROCEEDINGS.

. John's 2009 and 2010 tax returns listed his filing status as "married filing separately.” Therefore, these amounts of income were not reflected on those returns.

. At the time of trial, John had not yet filed his income tax return for 2011.

.Legal fault of one spouse prior to a reconciliation cannot be the basis for denying that spouse final periodic support. Hamsa v. Hamsa, 95-736 (La.App.5th Cir.1/17/96), 668 So.2d 1209.

. Dr. Thigpen was appointed by the court to evaluate the parties as an expert for determining child custody.

. We note that under La. R.S. 9:309(A) for covenant marriages, a judgment of "[sjeparation from bed and board does not dissolve the bond of matrimony, since the husband and wife are not at liberty to marry again.” Therefore, a petition for a judgment of separation from bed and board is arguably not a "proceeding to terminate the marriage” under Civil Code Article 111.