# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 17-665

**TYFFANY VERMAELEN**

**VERSUS**

**HARRY VERMAELEN, JR.**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 254,040
HONORABLE GREG BEARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS**
**JUDGE**
\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and D. Kent Savoie, Judges.

**AFFIRMED.**

**Gregory N. Wampler**
**Law Offices of Gregory N. Wampler**
**607 Main Street**
**Pineville, LA 71360**
**(318) 473-4220**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    Harry L. Vermaelen, Jr.

**Bradford H. Felder**
**G. Andrew Veazey**
**Veazey, Felder & Renegar, L.L.C.**
**2 Flagg Place**
**Lafayette, LA 70508**
**(337) 234-5350**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    Tyffany Vermaelen

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

Tyffany McKay Vermaelen and Harry Vermaelen, Jr. were married on August 13, 2011. They resided in Alexandria, Louisiana during the marriage. No children were born of the marriage. They separated on September 19, 2015. Tyffany filed for divorce on October 5, 2015.

After separating, Tyffany moved to Lafayette, Louisiana and became employed as a nurse. Harry remained in Alexandria. On July 14, 2016, the trial court awarded Tyffany interim spousal support in the amount of $1,000.00 per month. On August 4, 2016, Harry filed a Rule to Determine Pre-Separation Fault and Right to Final Spousal Support. On October 24, 2016, Tyffany filed a Rule for Contempt, Sanctions and Attorneys' Fees, To Make Arrearages Executory, and for Order Compelling Immediate Return of Wedding and Engagement Rings.

The parties entered into a Stipulated Judgment on December 7, 2016, which held Harry in contempt of court for his willful violation for nonpayment of interim spousal support. Harry was allowed to avoid the thirty days imprisonment by tendering the support payment due to Tyffany.

On January 19, 2017, Tyffany filed a final Rule for Contempt, to Deem Tyffany McKay Vermaelen Free from Fault, and for Attorneys' Fees. Those matters came before the court on January 26, 2017. After a hearing on the matter, the trial court issued written reasons for judgment on March 2, 2017, finding Tyffany to be free from fault under Louisiana law. The trial court also found Tyffany proved she was entitled to permanent spousal support and Harry was able to pay said support. The trial court determined Tyffany was entitled to $350.00 per month in permanent spousal support. A judgment in accordance with the written reasons was signed by the trial court on May 15, 2017.

Harry has timely appealed the trial court's judgment, asserting the trial court erred in finding that Tyffany "was free from fault in accord within that meaning of that term at Louisiana law," and in finding that Tyffany "was in need of support and that [Harry] is able to pay." Tyffany answered the appeal and asserts the trial court erred in not awarding $1,000.00 per month in permanent spousal support.

## ANALYSIS

Louisiana Civil Code Article 112 provides that the court may award final periodic support to a spouse who has not been at fault and is in need of support.

### I. *Fault Determination.*

In his first assignment of error, Harry contends the trial court erred in finding Tyffany was free from fault in the dissolution of the marriage. In seeking final periodic support, Tyffany bore the burden of proving that she was free from fault in the dissolution of the marriage. *Terry v. Terry*, 06-1406 (La.App. 3 Cir. 3/28/07), 954 So.2d 790. "It is well settled that a trial court's factual findings regarding fault in the area of domestic relations are given great deference on review. If the trial court's findings are reasonable, i.e. not manifestly erroneous or clearly wrong, then they will not be disturbed." *Id.* at 793 (citing *Coleman v. Coleman*, 541 So.2d 1003 (La.App. 3 Cir.1989)).

For a spouse to be free from fault, that spouse must not have had any misconduct of a serious nature that is an independent, contributory or proximate cause of the failure of the marriage. *Kendrick v. Kendrick*, 106 So.2d 707 (La. 1958). "Such acts are synonymous with the fault grounds that previously entitled a spouse to a separation or divorce, i.e., adultery, conviction of a felony, habitual intemperance or excesses, cruel treatment or outrages, public defamation, abandonment, an attempt on the other's life, status as a fugitive, and intentional non-support." *Mayes v. Mayes*, 98-2228, p. 3 (La.App. 1 Cir. 11/5/99), 743 So.2d 1257, 1259-60.

3

Harry argues, as he did below, that Tyffany was guilty of abandonment of the marriage by leaving the matrimonial domicile. We find this argument lacks merit. "Abandonment can serve as grounds for fault only if one of the parties withdrew from the matrimonial domicile without lawful cause *and* constantly refused to return." *Ashworth v. Ashworth*, 11-1270, p. 3 (La.App. 3 Cir. 3/7/12), 86 So.3d 134, 137. It is undisputed that Tyffany was the one to leave the couple's domicile in September 2015. Therefore, the first criterion for abandonment is present.

However, under the second criterion, if she had justification or lawful cause to leave, Tyffany is without fault for abandonment. Tyffany testified Harry demanded a divorce from her and she "begged and pleaded" to no avail to get Harry to change his mind. She also testified a counseling session was set up, but cancelled because Harry told her "nothing is going to change." Thus, Tyffany had lawful cause to leave the matrimonial dwelling because Harry owned the marital home as his separate property and told her explicitly he wanted her to leave and he wanted a divorce.

Moreover, there was no evidence that Harry made any request for Tyffany to return to the matrimonial domicile. We find the trial court did not manifestly err in finding Harry failed to establish the elements for abandonment.

Harry also alleges Tyffany was at fault for refusing his reasonable requests for sex. In brief, Harry cites a snippet of Tyffany's testimony, wherein she acknowledges *on occasion* denying request for sex, to support his assertion. However, Tyffany's full testimony does not support Harry's contention that she refused his reasonable requests for sex:

Q. Were there any reasonable requests for sex that you denied?

A. I'm sure there were. I mean, I don't know a number but I'm sure every time you're asked it doesn't happen. But on most occasions, yes.

4

Q. Most occasions you agreed?

A. Agreed. Yes, sir.

Likewise, Harry's own testimony belies his assertion that Tyffany refused his repeated requests for sex:

Q. You heard her testify that she thought any reasonable request for sex was granted. Did you ask for sexual intercourse or intimacy that was refused?

A. If it was, I don't really recall it. I don't really remember having any type of a conflict or issues with our sex life.

Q. And to your knowledge, in fact, you didn't have really a problem for that, is that right?

A. No, sir. Not really. I mean, you know, sometimes she'd want to go to sleep, and sometimes I'd want to go to sleep.

We find no merit to Harry's contention that Tyffany was at fault in the dissolution of the marriage because she refused repeated requests for sex.

Harry also accused Tyffany of engaging in certain financial acts that were not authorized, or done without the knowledge of Harry. For a portion of the marriage, Tyffany worked at Harry's company, Southern Shooters, and conducted managerial roles such as purchasing and selling items through the company's PayPal account. The trial court heard conflicting testimony from the parties, and determined no legal fault arose from these allegations. Specifically, the trial court found "Harry's own testimony reflects these [alleged] instances were not known until after the filing for divorce and 'digging around.'" Thus, the trial court concluded these allegations were not an "independent or proximate cause for the failure of the marriage."

After a thorough review of the record, we find the trial court did not manifestly err in concluding Tyffany was free from legal fault in the dissolution of the marriage.

## II.    *Spousal Support.*

At the hearing to determine final periodic spousal support, the parties stipulated that the financial condition of the parties had not changed since the prior hearing on interim spousal support.  At the interim hearing, the trial court found Tyffany was in need of support and Harry was able to pay.  The parties stipulated at the final support hearing as follows:

> MR. FELDER [counsel for Tyffany]:  Your Honor, I guess we'll start with our stipulation.  The parties have agreed to stipulate that the financial condition of the part[ies] is the ability to pay and the need that were established at the hearing in May in this matter have not substantially changed.  And therefore, with regard to spousal support, the issues that we're going to be addressing today are fault.
>
> MR. WAMPLER [counsel for Harry]:  That's correct, Judge.
>
> MR. FELDER:  That's one issue.
>
> MR. WAMPLER:  Right.  Yes, sir.
>
> THE COURT:  So in regards to that, whatever the numbers were at the time of the last hearing are going to be the numbers today?
>
> MR. WAMPLER:  Correct.
>
> MR. FELDER:  Yes, Your Honor.
>
> THE COURT:  And so today's purposes are we're going to litigate the issue of fault only in regards to spousal support?
>
> MR. WAMPLER:  Correct.
>
> MR. FELDER:  Right.

Therefore, any argument by Harry that the trial court erred in finding Tyffany was in need and Harry had the ability to pay is rendered moot by the stipulation between the parties at the start of the final support hearing.

Tyffany answered Harry's appeal, and asserts the trial court manifestly erred in setting the final spousal support at $350.00 per month rather than the $1,000.00 per month awarded for interim spousal support.  Noting the parties agreed the

financial situations of the parties had not changed since the award of interim spousal support, Tyffany maintains the trial court erred in reducing the amount.

An award of final spousal support is reviewed for an abuse of discretion. *Bhati v. Bhati*, 09-1030 (La.App. 3 Cir. 3/10/10), 32 So.3d 1107. Louisiana Civil Code Article 112 requires that, in awarding final spousal support, "[t]he court shall consider all relevant factors ... including[:]"

> (1) The income and means of the parties, including the liquidity of such means.
>
> (2) The financial obligations of the parties, including any interim allowance or final child support obligation.
>
> (3) The earning capacity of the parties.
>
> (4) The effect of custody of children upon a party's earning capacity.
>
> (5) The time necessary for the claimant to acquire appropriate education, training, or employment.
>
> (6) The health and age of the parties.
>
> (7) The duration of the marriage.
>
> (8) The tax consequences to either or both parties.

Additionally, La.Civ.Code art. 112 requires that the award of final spousal support "shall not exceed one-third of the obligor's net income."

This court in *Miller v. Miller*, 13-1043, pp. 11-12 (La.App. 3 Cir. 4/2/14), 161 So.3d 690, 698, *writ denied*, 14-1607 (La. 10/31/14), 152 So.3d 154, further stated:

> An award for final spousal support must be "based on the needs of that party and the ability of the other party to pay." La.Civ.Code art. 112. Article 112 mandates that courts "shall consider all relevant factors" and enumerates more than eleven factors courts "may" consider in establishing an award. In view of the purpose of final spousal support and the factors that may be considered in awarding such support, we cannot say that a party's needs for purposes of final spousal support cannot be influenced by or be relative to the way he or she lived during the marriage. In fact, Article 112 appears to contemplate this as it requires consideration of the parties' "needs" and "ability to pay" and also includes "the income and means of the

7

parties" as factors courts may consider when awarding final spousal support. Consideration of these factors does not equate with finding that a party entitled to a final spousal support award is entitled to an award that would allow her to maintain the lifestyle she enjoyed while married.

Additionally, this court in *Launey v. Launey*, 98-849, p. 3 (La.App. 3 Cir. 12/9/98), 722 So.2d 406, 408, stated:

> The spouse who demonstrates a need for permanent alimony is only entitled to an amount sufficient to provide for his or her maintenance. *Ward v. Ward*, 339 So.2d 839 (La.1976). "Maintenance includes food, clothing, shelter, reasonable and necessary transportation expenses, utility expenses, medical and drug expenses, household expenses, professional dues, home and health insurance policies, telephone expenses, personal items, and income tax liability generated by the alimony payments." *Widman v. Widman*, 93-613 (La.App. 3 Cir. 2/2/94); 631 So.2d 689, 691 *citing Vernotzy v. Vernotzy*, 591 So.2d 1293 (La.App. 3 Cir.1991).

According to Tyffany's testimony and her affidavit of income and expenses introduced at trial, her financial need was approximately $5,423.00 per month. At the hearing on interim spousal support, the trial court limited the award to $1,000.00 per month. Tyffany argues the trial court presumably limited the amount awarded based on Harry's ability to pay. With the parties stipulating that Harry's ability to pay and Tyffany's need for support had not changed since the prior hearing, Tyffany maintains it was manifestly erroneous for final spousal support to be reduced from $1,000.00 per month to $350.00 per month.

The law is clear that there are different calculations used in determining support due at the interim support stage and the final support stage. "Final periodic support is awarded to a former spouse in need and is limited to an amount sufficient for maintenance as opposed to a continuation of an accustomed style of living." *Dufresne v. Dufresne*, 10-963, p. 20 (La.App. 5 Cir. 5/10/11), 65 So.3d 749, 762, (quoting *Dufresne v. Dufresne*, 08-215, 08-216, p. 15 (La.App. 5 Cir. 9/16/08), 992 So.3d 579, 589). The need for interim spousal support is determined by establishing a spouse "lacks sufficient income or the ability to earn a sufficient

8

income 'to sustain the style or standard of living that [s]he enjoyed while [s]he resided with the other spouse.'" *January v. January*, 94-882, 94-883, p. 3 (La.App. 3 Cir. 2/1/95), 649 So.2d 1133, 1136.

If a support award is "within legal limits and based on facts supported by the record, we will not alter the amount of the award in the absence of an abuse of the trial judge's great discretion to set such awards." *Miller*, 161 So.3d at 697 (*quoting Baggett v. Baggett*, 96-453, p. 4 (La.App. 3 Cir. 4/23/97), 693 So.2d 264, 266-67). After carefully examining the record, we find the trial court did not abuse its great discretion in awarding $350.00 per month in final spousal support to Tyffany.

## DECREE

For the foregoing reasons, the judgment appealed from is affirmed in all respects. Costs of this appeal are assessed to appellant, Harry Varmaelen, Jr.

**AFFIRMED.**