| ASHLEE S. MORGAN | * | NO. 2022-CA-0472 |
|---|---|---|
| VERSUS | * | COURT OF APPEAL |
| ROBERT J. MORGAN, JR. | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 66-959, DIVISION "B"
Honorable Michael D. Clement,
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*

(Court composed of Judge Rosemary Ledet, Judge Paula A. Brown, Judge Pro Tempore James F. McKay, III)

Timothy Thriffiley
PIVACH, PIVACH, HUFFT, THRIFFILEY & DUNBAR, L.L.C.
8311 Highway 23
Suite 104
Belle Chasse, LA 70037

COUNSEL FOR PLAINTIFF/APPELLANT

Marc D. Winsberg
Anne S. Lemoine
WINSBERG HEIDINGSFELDER & GAMBLE, LLC
650 Poydras Street
Suite 2050
New Orleans, LA 70130

COUNSEL FOR DEFENDANT/APPELLEE

**MOTION TO DISMISS DENIED;
JUDGMENT AFFIRMED**

**DECEMBER 13, 2022**

This is a domestic action. Appellant, Ashlee S. Morgan ("Mrs. Morgan"), seeks a devolutive appeal of that portion of the district court's April 19, 2022 judgment, which found her to be mutually at fault for the dissolution of her marriage from Appellee, Robert J. Morgan ("Mr. Morgan") pursuant to La. C.C. art. 103(2) for adultery. Also before this Court is a motion to dismiss untimely appeal filed by Mr. Morgan. For the reasons that follow, we deny the motion to dismiss and affirm the district court's judgment finding Mrs. Morgan at fault for adultery.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Morgan and Mrs. Morgan were married in the State of Georgia on August 11, 2010. The couple did not contract to enter into a covenant marriage as contemplated under La. R.S. 9:272 *et seq*., nor did they later convert their marriage into a covenant marriage. Following, Mr. Morgan and Mrs. Morgan established their domicile in Plaquemines Parish, Louisiana. Three children were born during the marriage in 2012, 2014 and 2017. On September 15, 2021, Mrs. Morgan filed

1

a petition for divorce pursuant to La. C.C. art. 102. Mr. Morgan and Mrs. Morgan began living separate and apart shortly before Mrs. Morgan filed her petition for divorce.

Mr. Morgan filed his answer and reconventional demand to Mrs. Morgan's petition for divorce on November 10, 2021.[1] In his reconventional demand, Mr. Morgan averred that he was entitled to an immediate divorce from Mrs. Morgan based upon adultery pursuant to La. C.C. art. 103(2).[2]

Mrs. Morgan filed a petition for protection from abuse and motion for contempt[3] against Mr. Morgan, which came for hearing on January 4, 2022.[4] At the conclusion of the hearing, the district court granted a twelve-month protective order in favor of Mrs. Morgan. On February 22, 2022, Mrs. Morgan filed a supplemental petition for divorce in which she requested that the district court

---

[1] In his answer and reconventional demand, Mr. Morgan alleged the couple began to live separate and apart on September 11, 2021, while in his testimony at the April 5, 2022 hearing, Mr. Morgan testified that the date of separation was September 14, 2021. Mrs. Morgan's petition, pleadings and testimony were all silent as to the date of physical separation.

[2] At issue in this case is La. C.C. art. 103, subparts 2 and 5, which provide that:

> Except in the case of a covenant marriage, a divorce shall be granted on the petition of a spouse upon proof that:
>
> * * *
> (2) The other spouse has committed adultery.
>
> * * *
> (5) After a contradictory hearing or consent decree, a protective order or an injunction was issued during the marriage against the other spouse to protect the spouse seeking the divorce or a child of one of the spouses from abuse.

[3] Neither the petition for protection from abuse nor the motion for contempt are contained within the record before us. This information was obtained from the district court's minutes.

[4] Mrs. Morgan also filed a request for interim spousal support, which was heard on the same date.

grant her an immediate divorce from Mr. Morgan based upon the protective order that court granted at the January 4, 2022 hearing and in accordance with La. C.C. art 103(5).[5]

On April 5, 2022, the divorce matter came for hearing. After hearing the testimony of the witnesses and reviewing the evidence, on April 19, 2022, the district court granted a divorce to Mr. Morgan and Mrs. Morgan, finding the parties to be mutually at fault: Mrs. Morgan was found to be at fault based upon adultery pursuant to La. C.C. art. 103(2) and Mr. Morgan was found to be at fault under La. C.C. art. 103(5) by virtue of a protective order issued against him. Thereafter, on June 20, 2022, Mrs. Morgan filed a motion for devolutive appeal. Before considering the merits of Mrs. Morgan's appeal, this Court must first address Mr. Morgan's motion to dismiss the instant appeal as untimely.

## MOTION TO DISMISS UNTIMELY APPEAL

Mr. Morgan contends that Mrs. Morgan's motion for devolutive appeal is untimely because it was filed over thirty days after the time delay for applying for a new trial on the judgment of divorce. In support, Mr. Morgan relies on La. C.C.P art. 3942, which provides:

> Appeal from judgment granting or refusing annulment or divorce
>
> A. An appeal from a judgment granting or refusing an annulment of marriage or a divorce can be taken only within thirty days from the applicable date provided in Article 2087(A).
>
> B. Such an appeal shall suspend the execution of the judgment insofar as the judgment relates to the annulment, divorce, or any partition of community property or settlement of claims arising from the matrimonial regime.

---

[5] See fn. 2 *supra*.

La. C.C.P. art. 2087(A) sets forth the time delay for taking a devolutive appeal:

A.  Except as otherwise provided in this Article or by other law, an appeal which does not suspend the effect or the execution of an appealable order or judgment may be taken within sixty days of any of the following:

(1)  The expiration of the delay for applying for a new trial or judgment notwithstanding the verdict, as provided by Article 1974 and Article 1811, if no application has been filed timely.[6]

(2)  The date of the mailing of notice of the court's refusal to grant a timely application for a new trial or judgment notwithstanding the verdict, as provided under Article 1914.

Mr. Morgan argues that when La. C.C.P. art 3942 is read in combination with La. C.C.P. art 2087(A), the thirty-day time delay provided for in La. C.C.P. art. 3942 is controlling because Mrs. Morgan is appealing a judgment of divorce.

In opposition, Mrs. Morgan contends that because she is not appealing the divorce itself, but merely the finding of fault by the district court, her devolutive appeal is subject to the sixty-day time delay provided for in La. C.P. art. 2087(A). To support her position, Mrs. Morgan relies on the case of *Jarman v. Jarman*, 532 So.2d 484 (La. App. 1st Cir. 1988).  In *Jarman*, the plaintiff, Mr. Jarman, filed a petition for divorce on the grounds that the parties had been living separate and apart for one year.  Similarly to the case *sub judice*, the defendant, Mrs. Jarman, then filed an answer and reconventional demand requesting a divorce based on the grounds that Mr. Jarman had committed adultery.  The district court rendered judgment granting each party the relief they sought.  Mr. Jarman filed a motion for a limited devolutive appeal from that portion of the judgment which granted the

---

[6] La. C.C.P. art. 1974 provides: "A party may file a motion for a new trial not later than seven days, exclusive of legal holidays, after the clerk has mailed or the sheriff has served the notice of judgment as required by Article 1913." La. C.C.P. art. 1811 pertains to judgments notwithstanding the verdict and is, therefore, inapplicable in this instance.

4

reconventional demand and found him at fault for adultery. *Id*. at 485. On appeal, the reviewing court found that the issue of fault *vis-à-vis* adultery was a justiciable controversy separate and distinct from the actual divorce. The appellate court reasoned:

> [I]t is clear Mr. Jarman does not wish to appeal from the execution of the judgment insofar as it relates to granting the divorce. He merely wishes appellate review of the trial court's finding of adultery on his part. [La.] C.C.P. art. 3942 B does not prohibit Mr. Jarman from appealing devolutively from that portion of the judgment which finds him guilty of adultery. *See Conner v. Conner*, 499 So.2d 312 (La. App. 1st Cir. 1986), *writ not considered*, 503 So.2d 8 (La. 1987).

*Id*. at 486. We find this reasoning to be persuasive. Applying this rationale to the instant matter, we find that Mrs. Morgan's devolutive appeal is subject to the sixty-day time delay for devolutive appeals as provided for in La. C.C.P. art. 2087(A). Bearing in mind the applicable codal provisions outlining the delays and computation of time, Mrs. Morgan had until June 27, 2022 to file her motion for devolutive appeal; therefore, Mrs. Morgan's June 20, 2022 motion for devolutive appeal was timely. Accordingly, we deny Mr. Morgan's motion to dismiss untimely appeal.

## STANDARD OF REVIEW

As this Court has previously noted, "[a] trial court's finding of fault in a divorce is a factual determination subject to the manifest error standard of review." *Jennings v. Jennings*, 21-0386, p. 3 (La. App. 4th Cir. 12/1/21), 332 So.3d 179, 183 (citing *Thomas v. Thomas*, 17-0760, p. 2 (La. App. 4th Cir. 2/21/18), 238 So. 3d 515, 518). "The manifest error standard of review is based, in part, 'on the trial court's ability to better evaluate the testimony of live witnesses, compared with an appellate court's sole reliance upon a written record.'" *Martin v. Martin*, 16-0324 p. 6 (La. App. 4th Cir. 11/16/16), 204 So.3d 717, 721 (quoting *A.S. v. D.S.*, 14-

5

1098, p. 8 (La. App. 4th Cir. 4/8/15), 165 So.3d 247, 253). "To reverse a trial court's factual findings under the manifest error standard, an appellate court must find that 'a reasonable factual basis does not exist for the finding of the trial court' and that the record establishes that the finding is clearly wrong." *Matthews v. Big Easy Janitorial, L.L.C.*, 22-0164, p. 5 (La. App. 4th Cir. 8/10/22), 346 So.3d 325, 331 (quoting *Stobart v. State through Dept. of Transp. and Dev.*, 617 So. 2d 880, 882 (La. 1993)).

## DISCUSSION

In her sole assignment of error, Mrs. Morgan asserts that the district court erred in finding that she committed adultery pursuant to La. C.C. Article 103(2). Mrs. Morgan's argument is bifurcated. First, she contends that Mr. Morgan failed to prove by a preponderance of the evidence that Mrs. Morgan committed adultery. Second, Mrs. Morgan posits that any sexual relations that occurred after the filing of a petition for divorce do not constitute adultery for the purposes of La. C.C. art. 103(2). We will address each of Mrs. Morgan's arguments in turn.

*Proof of Adultery*

It is well settled that "[t]he petitioner claiming adultery bears the burden of proof by preponderance of the evidence." *Jennings*, 21-0386, p. 6, 332 So.3d at 184 (citing *Tidwell v. Tidwell*, 49,512, p. 2 (La. App. 2d Cir. 11/19/14), 152 So. 3d 1045, 1047). Further, "[a]dultery may be established by direct, indirect, or circumstantial evidence." *Id.* "If circumstantial evidence alone is relied upon, then the proof must be so convincing as to exclude any other reasonable hypothesis but that of guilt of adultery." *Id.* While "[a]n admission of adultery, without other evidence, is generally insufficient proof upon which to dissolve a marriage . . . . [a] trial court's credibility evaluation in an adultery case is entitled to substantial

6

weight on review." *Tidwell*, 49,512, pp. 3-4, 152 So. 3d at 1048 (citing *Bonura v. Bonura*, 505 So.2d 143 (La. App. 4th Cir. 1987); *see also Lachney v. Lachney*, 579 So. 2d 1097 (La. App. 2d Cir. 1991)).

Both parties testified at the April 5, 2022 hearing regarding the events that gave rise to the allegations of adultery asserted by Mr. Morgan against Mrs. Morgan. According to Mr. Morgan, on September 27, 2021, a friend contacted him and told him that Mrs. Morgan was at a male's house, later identified as Jerome Randolph ("Mr. Randolph"). Mr. Morgan testified that upon learning that Mrs. Morgan was at Mr. Randolph's house, he went to Mr. Randolph's house and took photographs.[7] Mr. Morgan explained that the images portrayed Mrs. Morgan's and Mr. Randolph's cars parked at Mr. Randolph's residence as well as an image of Mrs. Morgan later leaving that location. Mr. Morgan further testified that after going to Mr. Randolph's house, he waited to speak to Mr. Randolph. Mr. Randolph then forwarded him screenshots of text messages between Mr. Randolph and Mrs. Morgan.[8]

During her testimony, Mrs. Morgan was questioned directly as to the nature of her relationship with Mr. Randolph:

> Q.  On September 27th of 2021, you went to the house of a man named Jerome Randolph?
>
> A.  Yes.
>
> Q.  And you had sexual relations with him on that day?
>
> A.  Yes.
>
> Q.  And did you see the pictures that I showed your lawyer?

---

[7] The photographs taken by Mr. Morgan were offered, filed and introduced into evidence.

[8] Mr. Morgan offered into evidence several copies of screenshots of text messages between Mrs. Morgan and Mr. Randolph as well as text messages between Mr. Morgan and Mr. Randolph.

> A. Yes.
>
> Q. Okay. Those pictures show that your car was at his apartment on that day?
>
> A. Yes.

Following this line of questioning, Mrs. Morgan verified that the screenshots offered by Mr. Morgan accurately depicted messages sent between her and Mr. Randolph.

After weighing the testimony and evidence, the district court rendered its judgment in favor of Mr. Morgan and determined that Mrs. Morgan was at fault for adultery.[9] We find this to be a reasonable conclusion.

Based upon our review of the record, Mrs. Morgan admitted to having sexual relations with Mr. Randolph. Her own admission along with the testimony of Mr. Morgan and the other circumstantial evidence, taken as a whole, supports the district court's conclusion that Mr. Morgan proved by a preponderance of the evidence that Mrs. Morgan had engaged in adultery. This Court has consistently held that "the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Washington v. Gusman*, 15-0177, p. 14 (La. App. 4th Cir. 10/14/15), 183 So.3d 510, 523 (quoting *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993)). Moreover, "[t]he trial court, sitting as trier of fact, is in the best position to evaluate the demeanor of the witnesses, and its credibility determinations will not be disturbed on appeal absent manifest error." *Cockheran o/b/o Cockheran v. Christopher*, 21-0370, 21-0371, pp. 4-5 (La. App. 4th Cir.

---

[9] As previously noted in this opinion, the district court also found Mr. Morgan at fault for the dissolution of the marriage pursuant to La. C.C. art. 103(5).

10/28/21), 331 So.3d 389, 393 (quoting *Patterson v. Charles*, 19-0333, p. 9 (La. App. 4th Cir. 9/11/19), 282 So.3d 1075, 1082). Finding that the district court's conclusion was not an unreasonable one, this argument is not persuasive.

*Post-Filing Activity*

In support of her position that sexual relations that occur after the filing of a petition for divorce cannot be used to find fault for the purposes of an immediate divorce under La. C.C. art. 103(2), Mrs. Morgan posits that fault as contemplated in the 2018 legislative amendment to La. C.C. art. 112 should apply. We disagree.

The 2018 revisions to La. C.C. art. 112 provide, in pertinent part, that "[w]hen a spouse has not been at fault prior to the filing of a petition for divorce and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support in accordance with Paragraph B of this Article." In 1997, the Louisiana Legislature found it necessary to overhaul the various codal and statutory provisions relating to spousal support.[10] The resultant legislation is referred to collectively as the Spousal Support Act (the "SSA"). La. C.C. art. 111 was included in the SSA and established the basis upon which a court may award spousal support. In its original enactment, La. C.C. art. 111 provided:

> In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party free from fault prior to the filing of a proceeding to terminate the marriage, based on the needs of that party and the ability of the other party to pay, in accordance with the following Articles.

La. C.C. art. 112 was included in the SSA to aid in the courts in their determination of final periodic support as awarded under La. C.C. art. 111, listing all of the factors to be considered, but did not include any reference to fault. A 2006

---

[10] 1997 La. Acts 1078, § 1

amendment to La. C.C. art. 112 sought to address this oversight by adding that "[w]hen a spouse has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support. . . ." Finally, in 2018, La. C.C. art. 112 was again amended to mirror the language of La. C.C. art. 111 by providing that "[w]hen a spouse has not been at fault prior to the filing of a petition for divorce and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support. . . ." However, contrary to Mrs. Morgan's assertion, we find this provision did not substantively change this article. Rather, as noted in the 2018 revision comment (a):

> The 2018 revision is intended to clarify the relevance of need, ability to pay, and pre-filing fault to spousal support in the domestic violence and fault-based divorce context. Victims of domestic violence and others who obtain fault-based divorces benefit from a presumption of entitlement to final periodic support, but that presumption may be overcome by evidence regarding need, ability to pay, or pre-filing fault. Likewise, the court remains obligated to consider the factors set out in Paragraph B of this Article in determining whether support is appropriate when the claimant has obtained a fault-based divorce or is a victim of domestic violence.

Therefore, because we find that La. C.C. arts. 111 and 112 necessarily act in concert, this final modification of La. C.C. art. 112 makes it clear that this was the legislative intent of this article relating back to its initial codification in the SSA.

Furthermore, our review of the jurisprudence and scholarship regarding such inquiries leads us to the conclusion that the finding of fault in the context of determining final periodic spousal support, as provided for in La. C.C. art. 112, is an exercise separate from the finding of fault giving rise to grounds for immediate divorce contained within La. C.C. art. 103. In his review of La. C.C. art. 111 as enacted by the SSA, Kenneth Rigby gives an excellent analysis of how this fault

10

finding functions in the determination of whether a spouse is entitled to final periodic support:

> The legislature rejected the Law Institute's recommendation that fault of the claimant spouse not be a bar to final spousal support, but that the comparative marital misconduct of the spouses be one of the factors that could be considered in determining the entitlement, amount, and duration of final support. However, it restricted the fault which constitutes a bar to final support to "fault prior to the filing of a proceeding to terminate the marriage." This is a partial recognition that fault which precludes final spousal support should be directly related to, and a substantial cause of, the separation of the spouses that leads to the divorce. If fault on the part of a spouse is to bar that spouse from receiving final spousal support, that fault should be a significant cause of the breakup of the marriage, not an after-the-fact event. This limitation on support-barring fault to fault committed prior to the filing of a proceeding to terminate the marriage eliminates the troublesome and frequently unfair treatment of the claimant spouse in the formulation and application of the fault rules to post-separation fault when that fault occurs after one of the parties files a proceeding to terminate the marriage.

Kenneth Rigby, *The 1997 Spousal Support Act*, 58 La. L. Rev. 887, 889 (1998) (footnotes omitted). As Mr. Rigby notes, post-separation fault is addressed independently of fault determinations for purposes of awarding support. This is exactly the issue presently before this Court.

To bolster her contention, Mrs. Morgan relies on the case of *Vermaelen v. Vermaelen*, in which the appellate court reasoned that "[f]or a spouse to be free from fault, that spouse must not have had any misconduct of a serious nature that is an independent, contributory or proximate cause of the failure of the marriage." *Vermaelen v. Vermaelen*, 17-665, p. 3 (La. App. 3d Cir. 3/14/18), 240 So.3d 1004, 1006 (citing *Kendrick v. Kendrick*, 236 La. 34, 106 So.2d 707 (1958)). Mrs. Morgan reasons that her sexual relations after the filing of the petition for divorce could not be the proximate cause of the failure of the marriage because the filing of the petition demonstrated that the marriage had already failed. We find both this

11

reliance and reasoning to be misplaced. The rationale enunciated by the *Vermaelen* court was formulated in its analysis of La. C.C. art. 112 for the specific purpose of considering fault in a claim for spousal support. In the case *sub judice*, fault was found for the purposes of granting a judgment of divorce pursuant to La. C.C. art. 103(2), not for a determination of support; therefore, *Vermaelen* is inapplicable here.

We look to the jurisprudence to illustrate these differing approaches.

In *Shirley v. Shirley*, 48,635, 48,636 (La. App. 2d Cir. 10/16/13), 127 So.3d 935, the appellate court was called upon to determine whether Mrs. Shirley was barred from recovering spousal support when she had admittedly had an adulterous relationship after the filing to terminate the marriage, but before the final judgment of divorce. That court concluded that "Article 111 prevents consideration of [Mrs. Shirley's] actions in August 2010 from amounting to fault which would bar her recovery of spousal support. We view [Mr. Shirley's] filing to end the marriage in June 2010 as falling within the bright-line rule of Article 111." *Id.* at p. 15, 127 So.3d at 943.

In *Arnoult v. Arnoult*, 96-730 (La. App. 5th Cir. 2/12/97), 690 So.2d 101, Mrs. Arnoult filed a petition for divorce on March 13, 1995, while Mr. Arnoult filed an answer and reconventional demand on March 14, 1995. Both petitions requested a divorce pursuant to La. C.C. art. 102. Several months later, on August 25, 1995, Mr. Arnoult amended his petition to include allegations of adultery. The appellate court here found that the preponderance of the evidence substantiated Mr. Arnoult's claim of adultery, basing its findings on two post-filing incidents that occurred on May 13 and May 21, 1995. The divorce was granted in favor of Mr. Arnoult pursuant to La. C.C. art. 103(2).

Finally, in *Tidwell*, 49,512, 152 So.3d 1045, Mrs. Tidwell admitted to having sex with another male a number of times after the date that her petition for divorce was filed. As in *Arnoult*, having found that this post-filing activity rose to the level of adultery, Mr. Tidwell was granted a divorce based upon La. C.C. art. 103(2).

In all of these instances, we find situations factually analogous to the matter before us now. Mrs. Morgan filed a petition for divorce. Shortly thereafter, while still married, Mrs. Morgan engaged in sexual relations with a man other than her husband. From our review outlined above, we find that fault as considered under La. C.C. arts. 111 and 112 cannot be conflated with fault as contemplated under La. C.C. art. 103(2). Accordingly, we find no error in the district court's judgment finding Mrs. Morgan to be at fault for adultery.

## CONCLUSION

For the foregoing reasons, we deny the motion to dismiss untimely appeal and affirm the judgment of the district court.

**MOTION TO DISMISS DENIED;**
**JUDGMENT AFFIRMED**